## JOSEPH COCKER v. THE STATE.

Unless an exception be taken to the overruling a motion for a continuance, this court cannot properly revise the action upon the affidavit. (Paschal's Dig., Arts. 1593, 2987, Notes 595, 736.)

It is a common but an erroneous practice in homicide for the judge to charge the jury upon the whole law of homicide. All charges ought to be founded on the special facts in each case, and the law expounded in the charge, hypothetically upon the facts, in all their varying aspects, as conducing to establish the guilt or innocence of the prisoner. (Paschal's Dig., Arts. 3059, 3060, Notes 744, 745.)

Where the charge was too favorable to the appellant, he has no cause to complain.

[See the history of the case, which justified a verdict for manslaughter, and might have justified a higher offense. Paschal's Dig., Arts. 2250-2267, Notes 670-672.]

APPEAL from Medina. The case was tried before Hon. GEORGE H. NOONAN, one of the district judges.

Cocker had gone to a well on the Salado, in Bexar county, accompanied by his son, a youth eleven years old, to water their stock. While they were at it, the appellant, Jones, accompanied by several others, came with their stock for the same purpose. Some dispute arose about the precedence in watering. Cocker was drinking, and brought his bottle and asked Jones to drink with him. Jones refused abruptly. Cocker then went to his gun, cocked it, and presented it at Jones. Cocker's son rode between them. Jones got a stone, and, moving round the horse of the son, snatched the gun from the hands of the appellant and threw it upon the ground. Young Cocker said that Jones struck his father with it. All agreed that Jones, who was a stout youth of eighteen years, beat and kicked Cocker, who was over sixty years old.

Cocker went to an elm tree, one hundred and fifty yards away. Jones gave the gun to the son of Cocker, and told him to take his father and the gun home. The son rode to the father and gave him the gun. The son was sent to

Cocker's house for his son-in-law. The son-in-law refused to go. But another son of Cocker and a Mexican went. The Mexican rode to the well, and Cocker advanced, calling to Jones, and swearing he would shoot him. Jones asked the Mexican for his pistol, but he refused, saying he would try to prevent the difficulty. The Mexican rode back towards Cocker, who with his sons were advancing, and Jones followed behind the Mexican's horse. The sons of Cocker swore that the whole party of Jones advanced with stones in their hands. On this point the witnesses of the state were silent. When the parties were thirty yards apart, Cocker said to the Mexican, "If you do not get out of the way I will shoot you." The Mexican cleared the way, and Cocker fired and killed Jones immediately. He then mounted his son's horse and galloped away. The son swore that the father was drunk. The case was tried seven years after the tragedy.

The judge charged the jury in the language of our statutes about felonious homicide, Paschal's Digest, Arts. 2250, 2252, 2266, 2267, and refused all charges which raised the hypothesis of excusable homicide. He also refused a charge which sought to excuse the offense on the score of self-defense. There were several bills of exception, which were not noticed by the court. They were not full enough of facts to meet the requirements of the practice. The jury found the deceased guilty of manslaughter, and assessed his punishment at two years, from which he appealed.

No brief for the appellant has been furnished to the *Reporter.*

*E. B. Turner*, *Attorney General*, for the state.

LINDSAY, J.—Upon an indictment for murder a trial and conviction of the appellant for manslaughter was had in

the district court, and from the judgment of that court he has appealed, and assigns various errors, for which he seeks a reversal.

Of the twelve assignments of error in the record, it is not necessary that this court should notice any others than the refusal of the court to grant a continuance on the affidavit of the accused and the refusal to give the charge to the jury asked by him at the trial. In the others we can perceive no merit.

On the first, it does not appear from the record that the point was reserved by a bill of exceptions. It has been repeatedly ruled by this court that the action of the court below upon applications for continuance will not be revised here unless the point is specially reserved by a bill of exceptions. (Compton v. Angier, 16 Tex., 93; Harrison v. Cotton, 25 Tex., 53.) For the efficient administration of justice much discretion is and should be confided to the judge before whom the trial is had in reference to continuances. Unless that discretion is in its exercise most palpably wrong, this court ought not to interfere. Whenever it does interfere it should be upon a bill of exceptions tendered, when an opportunity is thus afforded the judge to explain the reasons of his action. Besides, the affidavit itself was insufficient. Although the affidavit states that he had had an attachment issued in the county of Medina for the absent witnesses, charged to be commorant in the county of Bexar, yet it is not stated that the attachment was placed in the hands of any ministerial officer in the county of Bexar, without which due diligence was not used. The mere affirmation of diligence in the affidavit does not constitute the grounds for continuance exacted by the statute. All the facts must be stated, from which the court has to make the legal deduction of diligence. Nor did the affidavit negative the plausible inference which might be drawn that he, the affiant, was designedly instrumental in securing their absence for the purpose of pro-

curing a continuance. But, above all, if the facts expected to be proved by the absent witnesses had all been before the jury, that jury could not have reduced the penalty assessed by them without a total disregard of the obligations of their oath and of their duty to society. We can see no abuse of discretion by the judge in refusing the continuance.

Upon the second point, the refusal of the court to give the charge to the jury, asked by the defendant's counsel, we do not think it sufficient to justify a reversal of the case. It is a common practice among many district judges to give in charge to juries, in every case tried before them, the whole law upon the subject of homicide, whatever may be the circumstances under which it is committed. This is not now nor was it ever required in criminal cases. The effect of such charges is only to confuse the minds of the jury, and practically makes the juries the judges of the law as well as of the facts, which is expressly interdicted by the statute, and it is a fruitful source of impunity to criminals. All charges ought to be founded upon the special facts of each case, and the law expounded in the charge, hypothetically upon the facts in all their varying aspects, as conducing to establish the guilt or innocence of the prisoner. Otherwise, it would only be necessary in every trial for the judge to point the jury to the law of homicide in the Criminal Code, and hand it over to the jury to take with them on their retirement, to be discussed by them with closed doors, and by that discussion to eliminate the principles of criminal jurisprudence applicable to the case. Such is not the philosophy of our criminal law; but such is the practice under it in numerous cases. The charge given by the court in this case was sufficiently directory to the jury, upon the facts proved on the trial, to inform their minds fully as to the law, which was to guide them in making up their verdict. If there was any error committed by the court in charging the jury upon the facts

proved, as shown in the record, that error was committed against the state, of which the prisoner has no cause to complain. It might, if a new trial were granted, and the same evidence adduced, and a clear and distinct presentation of law made, in discriminating critically between the different species of homicide, upon the facts necessary to constitute each homicidal offense, superinduce a verdict still more prejudicial to the imagined rights of the prisoner. Although the charge asked by the prisoner's counsel is very good law, yet it was wholly abstract, and the court committed 'no error against the prisoner in refusing to give it. We are therefore of opinion the judgment ought to be affirmed, which is done accordingly.

JUDGMENT AFFIRMED.