## ED UNDERWOOD V. THE STATE.

### No. 1423. Decided June 23, 1897.

**1. Continuance—Diligence.**

Where the indictment was returned on the 1st of January, process was issued the 31st of March, and returned not executed the 12th of April, three days before the trial, which was on the 15th of April, it is apparent that diligence is not shown.

**2. Robbery—Continuance to Prove Alibi.**

On a trial for robbery alleged and shown to have been committed on the afternoon of the 7th of December, an application for continuance, to prove an alibi, which would only establish defendant's whereabouts from the 11th to the 18th of December, manifestly does not cover the time of the robbery, and it was not error to overrule the application.

**3. Change of Venue—Bill of Exceptions—Practice on Appeal.**

The action of the court in overruling a motion to change the venue will not be revised on appeal, unless the bill of exceptions reserved to the action contains the testimony, if any, which was adduced on the hearing of the motion. Following Blackwell v. State, 29 Texas Crim. App., 194.

**4. Witnesses—Joint Defendants.**

Parties who are charged jointly or severally with the same offense can testify for the State against each other.

**5. Competency of Witness Who Has Been Convicted but Where Appeal Is Pending.**

A party convicted of crime is not a convict so as to deprive him of his competency as a witness until he has had the court of last resort, to which he carries his case, pass upon said case. Following Arcia v. State, 26 Texas Crim. App., 193.

**6. Extradition—Tried for a Different Offense—Practice.**

A contention on the part of defendant, that he had been extradited for a murder of which he had been acquitted, and that he could not be placed upon trial for another and different offense, can not be availed of, for the first time, on a motion for new trial. And in no event will such matter be revised where the matters relating thereto have not been placed before the trial court and presented by the record on appeal.

APPEAL from the Criminal District Court of Harris. Tried before Hon. E. D. CAVIN.

Appeal from a conviction for robbery; penalty, fifteen years imprisonment in the penitentiary.

The indictment charged appellant and one Joe Burger and one August Otto jointly with committing a robbery, by exhibition of firearms, on the 15th of December, 1895, upon one Joe Levy, and taking from said Levy $18 in money.

Appellant made a motion for a change of venue based upon both the statutory grounds, which motion was overruled; but the bill of exceptions to the ruling does not set out the evidence adduced on the motion. Thereafter, at the same term of court, appellant moved for a severance on the trial from his codefendant, which was granted; and, defendants having failed to agree upon the order in which they were to be tried, the court ordered that the trial proceed as to this appellant.

38 Texas Crim. App.—13

Appellant then filed his motion for a continuance, which was overruled, and the matters pertaining to which will be found fully stated in the opinion, infra.

Joe Levy, a witness for the State, testified as follows: "My name is Joe Levy; I reside in Houston, Harris County, Texas; my place of business is at the corner of Jefferson and Louisiana Streets, Houston, Texas; I was at my place of business between 8:30 and 9 o'clock one Saturday night in December, 1895; it was between the 8th to the 11th of the said month, I think, but I don't remember the exact date, but know it was a Saturday night, when three men entered my store, two of whom I have since identified as the defendant, Ed Underwood, and Joe Burger; Underwood stopped at the door, and the other two came inside; one of them, Burger, I think, bought some tobacco, and gave me a five dollar bill to change; I was suspicious of them and hesitated, but just then a colored girl came in, and I felt like I had some protection then. I started to make the change when I heard the demand for my money; I looked up, and I saw that Otto and Burger had their pistols drawn on me; I was afraid they would kill me if I refused to obey them. I handed them my money, $16, all I had; it was silver coin—United States silver coin money. Then Underwood came in and said, "You have a watch." He took hold of me, and forcibly took my watch; it was a silver watch. All this was in Harris County, Texas. I had never seen either of these parties before the night of the robbery. I was then very much frightened and excited. I never saw them again until I saw them in the county jail sometime in the month of October or November following the robbery. I identified them when I saw them in the jail as the parties that robbed me. I did not belong to a political organization called the Eagle Club during the early part of the year 1896, and did not meet and talk to the defendant Ed Underwood at any such meetings, nor did I see him there. I gave up my money and my watch because those men forced me to give them up; they aimed their pistols at me, and demanded my money, and Underwood said if I did not give it up it would be the last of my life, and he (Underwood) pulled my watch out of my pocket and took it away from me. As soon as they finished robbing me they left my store; and soon after they were gone, that same night, I sent a man to a neighboring drugstore to telephone to the police station."

Joe Levy, a witness for the State, being recalled, testified as follows: "The robbery that I have testified about was committed by Burger, Otto, and the defendant, Ed Underwood, in December, 1895, Saturday night; don't remember the date. Burger and Otto took out pistols; all three had pistols. Never knew or saw them before that. I first learned their names while they were under arrest in jail."

Minnie Williams, a witness for the State, testified: "My name is Minnie Williams. I live in Houston; was in Joe Levy's store the night he was robbed. He was robbed by Joe Burger, August Otto, and Ed Underwood [pointed out the defendant Underwood in court as one of the robbers]. I went into the store just as they did, or a little ahead

of them. I had never seen them before. When they pulled their pistols
and demanded the money from Joe Levy, I holloed, and started to run.
Underwood grabbed at my head and told me to stop, and said, 'You
damned little bitch, I am not after you.' I got away, and ran home."

Joe Burger, who was a codefendant, testified for the State, and he
corroborated the testimony of the witnesses Levy and Minnie Williams.

Defendant objected to the testimony of this witness, the objection, as
show by his bill of exceptions number 3, being as follows:

"Because the said witness was a codefendant and jointly indicted with
the defendant Underwood, and because the said Burger had not been
offered as a witness in his own behalf or in behalf of the defendant Un-
derwood, and the case against the said Burger was still pending, he hav-
ing not been tried on the said charge and no nolle prosequi had been en-
tered by the State of the charge against the said Burger. And because,
at the former term of this court, the said Burger had been tried and con-
victed of the crime of robbery and his punishment assessed at confine-
ment in the State penitentiary for a term of ten years, and that in the
said cause the said Burger had pleaded guilty to the said charge of rob-
bery at the said former term, all of which appears of record in this court;
and because the said Burger was still resting under the said verdict and
judgment and sentence. And further, because the procuring of the evi-
dence of the said Burger is the result of a trade or bargain between the
district attorney and the said Burger, whereby it was agreed and under-
stood by and between the said district attorney and the said Burger, that,
if he would testify against this defendant in the case tried at the former
term of this court, and in this case, and would swear that this defendant,
Underwood, and himself committed the robberies with which they both
stood jointly charged, a mild punishment would be recommended in the
former case, and that the case now on trial would be dismissed as to the
said Burger; and the evidence now sought to be obtained from the said
Burger was to be the price paid by him for immunity from prosecution
in this case. Which said objection was by the court overruled, and to
which ruling of the court defendant then and there in open court ex-
cepted, and here now tenders his bill of exceptions, and asks the same
be allowed, signed and ordered filed by the clerk as a part of the record
in this case, which is accordingly done, this 29th day of April, 1897, with
and subject to the following additional statements and qualifications:

"This approval is not intended to, and does not certify that the
grounds of objection set forth in so much of this bill beginning with the
words, 'and further, because the procuring of the evidence of said Bur-
ger,' and ending with the words, 'immunity from prosecution in this
case,' are true, or in fact existed, and said approval is only intended to,
and does, only certify that said grounds were stated by counsel in making
the objections to the testimony of the witness Burger. The witness Bur-
ger, at the same term of court at which he was convicted, gave notice of
appeal to the Court of Criminal Appeals of Texas, from the judgment of

conviction in the case, in which it is recited in this bill he was convicted; and said case was, at the time said Burger testified in this case, and still is, pending on appeal in said Court of Criminal Appeals upon said appeal.

[Signed]      "E. D. CAVIN,

"Judge of the Criminal District Court of Harris County, Texas."

*J. B. Brockman,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at fifteen years in the penitentiary; hence this appeal.

When his case was called for trial, appellant filed his application for a continuance on account of the absence of Aiken Polkinghorn, H. Polkinghorn, and R. E. Polkinghorn, alleged residents of Harris County. This process was issued on the 31st day of March, 1897. The indictment was returned into court on January 1, 1897. The process was returned on the 12th of April, 1897, not executed. It is apparent that the diligence used was not sufficient. The case was tried on April 15, 1897. By each and all of the witnesses, defendant expected to prove that "on the night of the 15th of December, 1895, and for some time prior thereto, and afterwards, the foster mother of the defendant, Mrs. Clara Underwood, was seriously ill. The said witnesses, on the night of the 15th of December, 1895, were at the house of George E. Underwood and his wife, Mrs. Clara Underwood, and defendant was also there. That he came from his work between 5 and 6 o'clock in the afternoon, and remained at the house during the entire night, and slept in the room with the defendant." By the witness Aiken Polkinghorn, "he expected to prove that he slept in the same bed with the defendant on that night." He also alleges that these witnesses were at the time boarding at the house of his foster father, Geo. E. Underwood, and their usual and customary hour for retiring was about 9 o'clock. In other words, he expected to prove an alibi by the absent witnesses on the night of the 15th of December, 1895.

If the facts expected to be proved would not tend to substantiate this fact, then they would be useless in the case. This is the only night specified by defendant; though in a general way he alleges that he could prove by said witnesses that he was at his home several nights before and subsequent to December 15th. On the trial, the evidence showed that the robbery charged in the indictment was committed on the night of the 7th of December, 1895. His application also shows that one of the reasons why he was at home on the night of the 15th, and a few days before and after, was because Mrs. Underwood, his foster mother, was sick; and the evidence on the trial shows that that sickness began on the 11th, and continued until the 18th, of December; at least, that is the time fixed by

the witnesses who testify specifically as to the time of her sickness. It was during this sickness that appellant claims he was at home, and it was for the testimony of the absent witnesses to sustain this claim that his continuance was sought. If every word appellant says be true, that he was at home from the 11th to the 18th, inclusive, the testimony would have no bearing upon the case. It was not material, and did not tend to prove a single fact impeaching or contradicting the State's case. The evidence introduced by the State shows that the appellant committed the offense of robbery in connection with one Burger and one Otto, between 9 and 11 o'clock on the afternoon of the 7th of December, prior to the sickness of Mrs. Underwood; and it is not claimed by the defendant that he was at home the remaining evenings of the month of December. There was no error in the action of the court refusing to continue the case, and none in refusing a new trial on this ground.

Appellant filed a motion to change the venue in this case, setting up both grounds of the statute, to wit, that there existed such a prejudice against him that he could not obtain a fair and impartial trial in Harris County, and because there was a dangerous combination against him, instigated by influential persons. This was controverted by the State. The testimony is not stated in the bill of exceptions, if any was introduced. This is required by the statute, and has been the subject of discussion in several opinions. As presented by this bill of exceptions, we can not revise the action of the court. Blackwell v. State, 29 Texas Crim. App., 194.

During the trial, the State offered Burger (appellant's codefendant) as a witness. Appellant urged several objections to the action of the court permitting said witness to testify. The substance of the bill of exceptions may be thus stated: That Burger and defendant had previously been convicted in another robbery case, and both had perfected their appeal to this court. The appeal as to Burger was pending at the trial of this case. The State made an agreement with Burger, by which he (Burger) was to be relieved from punishment in this case provided he would testify truthfully as to the facts in this case as against appellant. The court permitted him to testify. This action of the court is justified by our statutory law. Parties who are charged jointly or severally with the same offense can testify for the State against each other, and the fact that a witness has been convicted of a felony does not of itself render the witness incompetent. The statute has provided that a party convicted of crime is not a convict until he has had the court of last resort to which he is entitled to carry his case pass upon said case. Until this has been done, or he has accepted the sentence of the court, thus making it a finality against him, he is not a convict, within the contemplation of our statute, so as to deprive him of his competency as a witness. This question is not a novel one. It was discussed in Arcia v. State, 26 Texas Criminal Appeals, 193, and that decision has been adhered to in an unbroken line of decisions. If it should happen that on appeal the accused had been errone-

ously convicted, then he would be placed in the same attitude as if he had not been convicted at all; and, in case of appeal until the judgment against him has been affirmed, he would not be a convict, so as to render him incompetent as a witness.

Appellant's seventh ground of his motion for a new trial, as presented, is not well taken. He claims immunity from trial in this case in said ground, because he was arrested in Canada, and brought to the United States on an extradition warrant charging him with murder, of which he was subsequently acquitted, and therefore he could not be placed upon trial on this charge. Whether or not there is any merit in this contention we are not called upon to decide. If in fact this offense was committed prior to his extradition for murder, and he was not extradited for this offense, there was a legal way by which that matter could have been reached; and if it be conceded that it could be reached upon a motion for a new trial, the matters showing his contention should have been placed before the trial court, and this court upon appeal. As presented by the record, we are not called upon to investigate the question.

In regard to appellant's contention that the evidence is insufficient, it may be stated that the accomplice Burger testified to the conspiracy between himself and appellant and Otto to commit robbery; that the three went to the business house of Levy, in Houston, and robbed him of $16 in silver, and this at the points of their pistols. These facts are testified to also by Joe Levy and by Minnie Williams. While there is some evidence introduced by appellant tending to impeach Levy and Williams, there is strong testimony in support of the truthfulness of their statements. But, however, this may be, the jury believed the witnesses for the State, and we see no reason why they should not have done so. The judgment is affirmed.

*Affirmed.*

[NOTE.—Appellant's motions for rehearing and in arrest of judgment were overruled April 27, 1898, without a written opinion.—Reporter.]