## Kent Giles v. The State.

No. 1614.   Decided April 10, 1912.

Rehearing denied June 5, 1912.

**1.—Slandering Female—Continuance—Want of Diligence.**

Where, upon trial of slandering a female, the application for continuance alleged that ever since defendant had been charged with the offense he had been trying to ascertain the whereabouts of the absent witness, but did not allege what efforts he had made, and the record showed that said witness might have been obtained before the conclusion of the trial by proper diligence, and did not show that a subpoena was ever issued for said witness, there was no error in overruling the motion for continuance.

**2.—Same—Rule Stated.**

A continuance is properly refused where there is a want of diligence. Following O'Neal v. State, 14 Texas Crim. App., 582, and other cases.

**3.—Same—Premature Application.**

If the application is prematurely made and under circumstances tending to show that, by the use of ordinary diligence between the date of the affidavit and the trial, the grounds of the application might have been obviated by the defendant, it is unquestionably insufficient. Following Buntain v. State, 15 Texas Crim. App., 515 and other cases.

**4.—Same—Mere Affirmation.**

The mere affirmation of diligence in an application for continuance does not suffice; the facts must be stated. Following Henderson v. State, 5 Texas Crim. App., 134 and other cases.

**5.—Same—Testimony Not Probably True.**

Where the absent testimony would not probably have been true, there was no error in overruling the motion for continuance.

**6.—Same—Jury and Jury Law—Bill of Exceptions.**

Where the qualification of the bill showed that the juror, who was objected to because he was a friend of one of the State's witnesses, said he could give defendant a fair and impartial trial, and the bill of exception did not show that the juror whom defendant was afterwards compelled to accept was in any way disqualified, there was no reversible error.

**7.—Same—Charge of Court—Bill of Exceptions.**

Where the defendant in his motion for a new trial did not point out the reason why his requested charges were not submitted by the court, and took no bills of exception to the court's charge, there was no error. Following Berg v. State, 64 Texas Crim. Rep., 612.

**8.—Same—Charge of Court—Misdemeanor.**

In misdemeanor cases, the only way this court is authorized to consider complaints of the charge of the court, and the refusal of special requested charges, is by bill of exceptions taken at the time. Following Hobbs v. State, 7 Texas Crim. App., 118, and other cases.

**9.—Same—Sufficiency of the Evidence.**

Where, upon trial of slandering a female the evidence was sufficient to sustain the conviction, there was no error.

**10.—Same—Continuance—Want of Diligence.**

No new rule is established in holding that where defendant's application for continuance was overruled and the trial was not concluded until three days thereafter and, that defendant made no effort during that time to procure the

attendance of the alleged absent witness who could have been secured by reasonable diligence, there was no error.

**11.—Same—Practice on Appeal—Whole Record Reviewed.**

In reviewing the overruling of an application for continuance, it has been the universal rule to consider in connection therewith the whole record and the whole statement of facts.

**12.—Same—Discretion of Court—Statutes Construed.**

The Statute, article 608, Code Criminal Procedure, subdivision 6, expressly provides that the truth of the application, as well as the merit of the grounds set forth therein and its sufficiency, shall be addressed to the sound discretion of the court, and shall not be granted as a matter of right.

**13.—Same—Motion for New Trial.**

The statute also expressly provides that, where an application for continuance has been overruled and the defendant convicted, a new trial shall be granted if it appear that the evidence of the absent witness was of a material character and that the facts set forth in said application are probably true. Following Mitchell v. State, 36 Texas Crim. Rep., 299.

**14.—Same—Diligence—Onus on Defendant.**

It must appear that all the means provided by law were resorted to by defendant to obtain the absent testimony, and it is not incumbent on the State to show a want of diligence in opposition to a continuance, and the application must in itself be complete to require this court to say that it was erroneously refused, and the onus is on the defendant.

**15.—Same—Case Stated—Want of Diligence.**

Where the record showed that by proper inquiry at the proper time for the absent witness, defendant would have gained information in ample time to have secured the attendance of the absent witness; but that defendant did not see to it that process was issued and placed in the hands of the proper officer, there was no error in overruling his motion for continuance, and the cases cited by defendant do not show that he used sufficient diligence.

**16.—Same—Due Diligence— Process Must be Placed in Hands of Officer.**

It is the duty of defendant to see that the clerk promptly issues the process and that it is placed in the hands of the proper officer, and that that officer actually and promptly executes the process or shows by his return that it can not be done, and it is not sufficient to make application to the clerk to issue process without further diligence to see that the same is issued and executed.

**17.—Same—Motion for New Trial—Affidavits—Case Stated.**

Where the defendant in his motion for new trial failed to procure the affidavit of the absent witness, and to show that the absent witness would testify as alleged in the application for continuance, and it appeared from the record on appeal that the absent witness would not have sworn to what the application claimed he would have sworn to, and if he had that his testimony would probably not have been true, and that it would not have changed the result of the trial, there was no error in overruling the motion for new trial.

Appeal from the County Court of Knox.   Tried below before the Hon. J. H. Milam.

Appeal from a conviction of slandering a female; penalty, a fine of one hundred dollars.

The opinion states the case.

*W. N. Combes* and *Jas. A. Stephens,* for appellant.—On question of

refusal of continuance, cases cited in 1 Buckler's Dig., subdivision 417, pages 422 to 423; Mapes v. State, 14 Texas Crim. App., 129.

On question that testimony of absent witness would have changed result of trial: Roquemore v. State, 54 Texas Crim. Rep., 592, 114 S. W. Rep., 140.

*C. E. Lane,* Assistant Attorney-General, for the State.—Cited cases in the opinion.

PRENDERGAST, Judge.—On August 1, 1911, by complaint and information filed that date, appellant was charged with slandering a certain married woman by language given in substance in the complaint and information, alleged to have been uttered on July 26, 1911, of having sexual intercourse with a certain man. The appellant was found guilty and fined $100.

The State proved that appellant uttered the slander of the said married woman, substantially as alleged. The State further proved the falsity of the charge by both the man and the woman who were charged with having sexual intercourse. In addition, the State proved by seven or eight witnesses, some men and some women, that they each knew the reputation of said married woman for chastity and virtue and that it was good. The slanderous language, by the State's witness was shown to have been uttered by the appellant in the presence of one of the State's witnesses and two other witnesses who were introduced by appellant. The appellant testified, denying having used the language. While both of the other witnesses testified, neither testified that he did not use the language. However, one of these witnesses of the defendant testified that in December, 1910, he saw the said slandered woman meet Henry Clements in the alley back of her house and they lay down together in the alley. This witness had just been tried for slandering this woman and acquitted. He had testified on that trial. The State introduced three witnesses, who testified that they were present on the trial of that witness and heard him testify therein and that he testified therein that he never saw Henry Clements and said slandered woman together at any time in his life.

One of appellant's witnesses, who was present at the time appellant used the slanderous language, testified that on a night in December, 1910, he and the other witness of appellant, who was present when the appellant uttered the slanderous language, were together and saw the slandered woman come out in her back yard and place a letter under a board under the yard fence about six inches from the closet. As soon as she went back they went and got that letter, and produced and identified it on the stand, this witness swearing that it was for said barber Henry Clements, and that they watched the next night and the said barber went and placed a letter under the same board for said woman and that as soon as he left they went and

got that letter, and produced and identified it on the stand. One of these witnesses swore that the night was dark when they saw these two claimed letter transactions. The other witness swore the same, except that he swore that the night they saw these letters placed and procured them was clear and bright, the moon was shining and he could see clearly. The slandered woman, when testifying, was shown the letter which it was claimed she placed under the board and she denied writing it or placing it under the board. On the testimony of these two witnesses, however, both letters were introduced in evidence. The State proved by Murphy, one of its witnesses, that appellant came to him, called him aside and told him that he, the witness, had been subpoenaed, as a witness, and that he, the witness, would have to swear that he saw Norville (who was working for us at the time) have an act of carnal intercourse (with said slandered woman) on the counter while he, the witness, was hiding under the counter and the witness told him he would not do it, as it was not true. While the appellant testified, he did not dispute this witness.

If the slandered woman wrote the letter that appellant's two witnesses claimed they saw her place under said board, which she denied writing, and it was for said Henry Clements, it would have shown that she at some time had had sexual intercourse with said Henry Clements. The letter on its face is not addressed to anyone, nor has it her or any other signature thereto. Neither was the letter, claimed by said two witnesses to have been placed under said board the next night by Henry Clements, addressed to anyone or signed by anyone.

Appellant made a motion to continue the case on account of the absence of said Henry Clements. He states in his application that ever since he had been charged with this offense he had been trying to ascertain the whereabouts of said witness. What efforts he had made and what he had done in this way, are not stated in the application. He further states therein that he never learned the whereabouts of said witness until on Sunday, August 6th, and that he then learned that the witness was in Abilene, Taylor County. He does not show that he made any effort on Sunday to procure any process whatever for this witness. Perhaps it was not necessary to do anything on Sunday. He then states in his application that on Monday August 7th, what time in the day is not stated, he properly applied for a subpoena to Taylor County for said witness, but he does not state that any was ever issued, or that any was ever placed in any officer's hands, or sent to any officer for execution. No subpoena appears in the record, hence, we conclude that no subpoena was ever issued, or placed in any officer's hands for execution. The judgment shows that the case was tried on August 9th and the motion for new trial shows that it was tried on August 9th. It seems, though this is not made certain, that the motion for a continuance was filed and acted upon on August 7th. At any rate, the record shows with

Vol. LXVI Crim.—41.

reasonable certainty that the case was tried on August 9th. In the application for continuance the appellant states that he expected to prove by Henry Clements that he received several letters from the slandered woman during the year 1910, and that they were placed under a board near the closet in the back yard of said slandered woman; that the letter his witnesses identified as having been placed under said board by him was written by him and placed under said board, and that the statements made in said letter are true, and that said Clements received other letters like the one that his said witnesses claim they saw the slanderous woman place under said board, and that said letter was genuine and written by her and that she had told said witness that she had written that letter. No questions of that kind were asked this woman when she testified on the trial. She was only asked if she had written that letter which was shown to her which she denied writing. The application does not show the distance from Benjamin, the county seat of Knox County where the case was tried, to Abilene in Taylor County, where the witness Clements was claimed to be, nor how long it would take to send process there, have him served and have him attend as a witness. Doubtless he could have been procured readily within two days.

A continuance is properly refused always where there is a want of diligence. O'Neal v. State, 14 Texas Crim. App., 582; Hart v. State, 14 Texas Crim. App., 657; Childers v. State, 16 Texas Crim. App., 524; Hawkins v. State, 17 Texas Crim. App., 593; Timbrook v. State, 18 Texas Crim. App., 1; Barrett v. State, 18 Texas Crim. App., 64; Bond v. State, 20 Texas Crim. App., 421; Moseley v. State, 25 Texas Crim. App., 515; Stegall v. State, 32 Texas Crim. Rep., 100; Underwood v. State, 38 Texas Crim. Rep., 193; Henry v. State, 38 Texas Crim. Rep., 306. If the application is prematurely made and under circumstances tending to show that by the use of ordinary diligence between the date of the affidavit and the trial the grounds of the application might have been obviated by the appellant, it is unquestionably insufficient. Buntain v. State, 15 Texas Crim. App., 515; Lewis v. State, 15 Texas Crim. App., 647; Stouard v. State, 27 Texas Crim. App., 1; Brown v. State, 32 Texas Crim. Rep., 119; Morgan v. State, 44 Texas 511; Buie v. State, 1 Crim. App., 452; O'Neal v. State, supra; Hughes v. State, 18 Texas Crim. App., 130; Franklin v. State, 34 Texas Crim. Rep., 203; Benson v. State, 38 Texas Crim. Rep., 487; Holmes v. State, 38 Texas Crim. Rep., 370; McGrath v. State, 35 Texas Crim. Rep., 413; Snodgrass v. State, 36 Texas Crim. Rep., 207. The mere affirmation of diligence in an affidavit for continuance does not suffice, the facts must be stated. Henderson v. State, 5 Texas Crim. App., 134; Cooper v. State, 7 Texas Crim. App., 194; Murray v. State, 1 Texas Crim. App., 174; Cantu v. State, 1 Texas Crim. App., 402; Murry v. State, 1 Texas Crim. App., 417; Buie v. State, supra. The mere affirmation of diligence is insufficient. All the facts must be stated from which the court has to make the legal deduction of dili-

gence.    Cocker v. State, 31 Texas, 498; Henry v. State, 38 Texas
Crim. App., 306.

The announcements of the several legal propositions just above
stated and the authorities establishing them are correct and are
taken by us from section 600, page 393, White's Annotated Code
Criminal Procedure.

A consideration of the whole testimony shows to our satisfaction
that even if the absent witness had been present, he would not have
testified as appellant stated he expected him to, and if he had, that his
testimony would probably not have been true.    The court did not err
in overruling the motion for continuance.

By another bill appellant complains that because the court would not
permit him to ask one of the jurors, Henderson, who stated that he
knew one of the State's principal witnesses and that he had known
him a number of years, and they were warm personal friends, and
who had stated that he did not know the defendant or his two prin-
cipal witnesses.    "If there was a conflict between the testimony of
his warm personal friend and the testimony of some of the witnesses
he did not know, would he believe the testimony of that witness in
preference to other witnesses," claiming that the juror in answer to
such question would have stated that he would believe the testimony
of his friend in preference to witnesses he did not know; that there-
upon appellant was compelled to peremptorily challenge this juror,
and having exhausted his challenges, he was thereafter compelled to
take as a juror another who was objectionable to appellant, and whom
he would have challenged had it not been that he was compelled to
use the challenge on the said juror Henderson.    The court in ap-
proving this bill did so with this qualification, that the juror Henderson
further stated that the fact that he was a friend of one of the State's
witnesses would not prevent him from giving a fair and impartial
trial.    It will be seen by this bill that the appellant in no way shows
that the juror, whom he was afterwards compelled to take, was in any
way disqualified as a juror or was not fair and impartial or that he
was injured by having to take him.    He states he was only objection-
able without stating how. or in what way he was objectionable.    This
bill does not show that the court committed reversible error.

The record shows that the appellant took no bills of exceptions
whatever to the charge of the court or any part thereof on the trial
of the case.    For the first time in the motion for new trial he makes
several complaints of the charge of the court.

He requested some ten special charges which are shown to have been
refused by the court.    In neither of these charges does he state any
reason why either or any of them should have been given.    In his
motion for new trial, as one separate paragragh thereof, of why a new
trial should be granted, he says:    "Because the court erred in refusing
to instruct the jury, as requested by the defendant in his special
charge No. ...... on file herein," filling each blank with the number

of the change from one to eleven consecutively. Under the well established law of this State such complaints of refused charges could not be considered by this court even in a felony case, much less a misdemeanor, as this is. Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W. Rep., 884, and Ryan v. State, 64 Texas Crim. Rep., 628, 142 S. W. Rep., 878, and authorities therein cited.

Again, it is the well established law of this State that, in misdemeanor cases, the only way this court is authorized to consider complaints of the charge of the court and the refusal of special charges requested, is by bill of exceptions taken at the time to the charge of the court in the matters attempted to be complained of and to the refusal of the court to give the special charges requested, giving in the bill therefore the specific reasons why the court erred in giving the charge complained of or as the case may be, in refusing the requested charge. Articles 717, 719, 723 Code Criminal Procedure (old); Hobbs v. State, 7 Texas Crim. App., 118; Campbell v. State, 3 Texas Crim. App., 33; Goode v. State, 2 Texas Crim. App., 520; Dunbar v. State, 34 Texas Crim. Rep., 596; Downey v. State, 33 Texas Crim. Rep., 380; Cole v. State, 28 Texas Crim. App., 536; Loyd v. State, 19 Texas Crim. App., 322; Lucio v. State, 35 Texas Crim. Rep., 320; Martin v. State, 32 Texas Crim. Rep., 442; Wright v. State, 60 Texas Crim. Rep., 386; Jenkins v. State, 60 Texas Crim. Rep., 467; Basquez v. State, 56 Texas Crim. Rep., 330. It is unnecessary to cite other cases.

The evidence, if believed, is clearly sufficient to sustain the verdict. There being no reversible error, the judgment will be affirmed.

*Affirmed.*

### ON REHEARING.

### June 5, 1912.

PRENDERGAST, JUDGE.—Appellant by and through his attorneys, has filed a motion for rehearing herein. His first assertion is in substance that this court "erroneously stated in the original opinion that the trial was had on August 9, 1911, and that the application was overruled on the 7th, and that in order to substantiate this statement in the original opinion it is necessary to overrule all former opinions of this court which hold that the bill of exceptions is conclusive as to what was done and that the court will not look to the record to supply a bill of exceptions; and that the bill, in plain language, states that the application for a continuance was overruled by the court and he was forced to trial on August 7, and to hold that the date of the judgment should be more conclusive than the bill of exceptions would be to establish a new rule unheard of in this court and unsupported by any authority." He states, and the record, without any doubt shows, that while his application for a continuance was filed and overruled and he forced to trial on August 7, the trial only began that day and was not concluded until on the 9th, lasting three days, so that even if the trial did begin on the 7th, as it continued until on the 9th under the au-

thorities it is the same in effect as it was on the 9th, for he had till then to procure and introduce his witnesses.

It is noticeable that while these broad assertions are made by appellant in his motion for rehearing, no case, and no authority, is cited to support them, for the simple reason that there is no such authority and no such case. No former opinion of this court is overruled, modified, or qualified by the original opinion herein rendered, nor is it in conflict with any previous opinion of this court. No new rule is established and the decision heretofore rendered is supported by all the authorities, statutory and decisions, from this State.

This court has never done the foolish and absurd thing of reviewing the overruling of an application for a continuance as an abstract and isolated proposition. On the contrary it has been the uniform and universal rule in reviewing the overruling of an application for a continuance to consider in connection therewith the whole record and the whole statement of facts. And it has been the uniform and universal rule of this court not to review the overruling of an application for a continuance or reverse a case because it was overruled in the lower court where there is no statement of facts, for the plain, simple reason that without a statement of facts and the record in connection therewith, this court can not tell whether the application was erroneously overruled, nor the merits of the grounds set forth therein, nor whether it was sufficient, nor whether or not the evidence was materials or probably true. The statute, article 608 Code Criminal Procedure, subdivision 6, expressly states that "the truth of the application as well as the merits of the grounds set forth therein *and its sufficiency* shall be addressed to the sound discretion of the court and *shall not be granted as a matter of right.*" Then again, it expressly provides that where an application has been overruled and the defendant convicted, a new trial shall be granted if it appear "that the evidence of the witness named in the application was of a material character and that the facts set forth in said application were probably true." This court, through Judge Hurt, in Mitchell v. State, 36 Texas Crim. Rep., 299, in discussing the diligence used to procure witnesses, among other things, said: "When the case was called for trial, it was three or four days before the evidence closed in the case, and yet no effort is shown in the application to obtain the attendance of said witnesses. We reasonably presume that, if they lived in the county, their attendance could have been secured by any reasonable effort on the part of appellant before the close of the testimony."

Again, in the same case, in considering a motion for rehearing, discussing the same question on page 307, he said: "It will be further observed that, although the trial in this case lasted four or five days, no effort was made to procure the attendance of any of the absent witnesses *after the trial began. For aught that appears, by the use of reasonable diligence, they could have been obtained in time to have testified in the case.* Counsel, however, insist that on the overruling

of his motion for a continuance he was not able to do any more in the way of diligence, and, no matter if said witnesses were accessible, and could have been produced, that upon the overruling of his motion for a continuance the case was, as to that matter, in statu quo, and this court could not look beyond the time of the overruling of the application for a continuance as to the question of diligence. The statute places it in the discretion of the court to overrule a motion for a continuance, and then to reexamine the question on motion for a new trial, and to refuse a new trial, unless it should appear that the absent testimony was material, and probably true. *And we hold that it is perfectly competent for the court to look to the action of the appellant and his counsel after the overruling of a motion for continuance in passing upon the materiality or probably truth of the absent testimony.* Suppose, in a trial of this character, counsel were informed by the court that the witness was in town and could be had, and counsel should decline to ask for process to bring the witness before the court, or suppose that afterwards (as in the case of the witness Chancery) he should actually come into court, and appellant should decline to use him, would not the court be compelled to hold in such case that appellant was trifling with the court, that the witness would not swear what was alleged, or else appellant did not regard the testimony as probably true? Such occurs to us to be the inevitable conclusion."

It is conceded and admitted by appellant that the trial began on August 7 and that the verdict of the jury and judgment thereon were not rendered until some time on the 9th. So that the trial of the case consumed the 7th, 8th and 9th days of August. Article 718, Code Criminal Procedure requires that if it appear necessary to a due administration of justice *"the court shall allow testimony to be introduced at any time before the argument of the cause is concluded."* We judicially know where the respective counties are situated in this State and where and how they are situated with reference to one another. It is the opinion of the writer that we also judicially know the county seats of each of the counties of this State and the location of the railroads with reference thereto. And we judicially know that the county seat of Knox County, where this trial occurred, and Abilene, the county seat of Taylor County, where the absent witness is alleged to have been, are connected by railroads and that they could not be much more than about 100 miles apart, or a reasonable distance in addition to 100 miles. Chamberlain on Modern Evidence, section 743; Missouri, K. & T. Railroad v. Lightfoot, 106 S. W. Rep., 395; Carson v. Dalton, 59 Texas, 500; Whitener v. Belknap, 89 Texas, 273; 2 Willson's Texas Civ. App., section 679; 3 Willson's Texas Civ. App., sections 188 and 163; Stewart v. State, 31 Texas Crim. Rep., 154; Satterwhite v. State, 6 Texas Crim. App., 612; McGill v. State, 25 Texas Crim. App., 512; Boston v. State, 5 Texas Crim. App., 385; State v. Jordan, 12 Texas, 206.

But we do not have to rely upon our judicial knowledge of these facts for, as said by this court, through Judge White in Buie v. State, 1 Texas Crim. App., 456: "With regard to the other portion of the application, so far as it concerns the witness Kennedy—viz.: that affiant learned two or three days ago that witness resided in Bell County—the statement is too indefinite. It does not show that he used any efforts, and, if so, what, to ascertain the whereabouts of the witness' residence. *And it should have shown, if such was the fact, that, after learning the residence of the witness, the distance between his residence and the place of trial was so great that it was improbable, if not impossible, to have secured service of the process and his attendance. For aught that appears, 'two or three days' might have been amply sufficient, with the use of proper diligence, to have had the witness brought from his place of residence to the place of trial."*

Again, the Supreme Court, when it had criminal jurisdiction, in Townsend v. State, 41 Texas, 135, said: "If it be regarded as an attempt to excuse the want of diligence, it fails to show that, after the discovery of the place where the witnesses were to be found, there was not sufficient time to have the attachments served. For aught that appears, ten days or two weeks may have been ample time for that purpose. In applications addressed to the discretion of the court it must clearly appear that the continuance was improperly refused before the judgment will be reversed. (Lewis v. Williams, 15 Texas, 47; Trammell v. Pilgrim, 20 Texas, 160; Burrell v. The State, 18 Texas, 729.)"

Again, this court, through Judge Willson, in Barrett v. State, 18 Texas Crim. App., 67, said: "An application for a continuance should set forth fully and distinctly the diligence used to obtain the absent testimony, or such facts as will excuse the use of diligence; *and it must appear that all the means provided by law were resorted to by the defendant to obtain the testimony, and were resorted to promptly, or that facts existed which excused him from exercising such diligence."*

Again, Judge Willson for this court, in Walker v. State, 13 Texas Crim. App., 647, said: "We know of no rule of law which requires the State to show a want of diligence in opposition to a continuance. It devolves upon the defendant to show affirmatively and distinctly that he has used all the diligence to obtain his witness required by law."

Again, this court, in Massie v. State, 30 Texas Crim. App., 67, through Judge Davidson, said: "Neither will this court nor the trial court supply by inference and presumption allegations not contained in an application for a continuance which should be stated therein. The application must be complete within and of itself in order to require this court to say it was erroneously refused. Presumption when indulged will and must be in favor of the rulings of

the court in reference to the matter complained of, and not against same."

Again, this court, in Long v. State, 17 Texas Crim. App., 129, said: "The onus is upon the defendant to establish the exercise of diligence in support of an application for a continuance. . . . The burden is upon the party seeking a continuance to show himself entitled to it, by definite, exact and certain averments."

Again, this court in Skipworth v. State, 8 Texas Crim. App., 139, said: "The law requires of a defendant a rigid compliance with the exact terms prescribed for such application, and if there is a lack of diligence apparent from the application *or otherwise*, its mandate is inexorable and the trial must proceed."

In this case it is unquestionably shown that the appellant learned on August 6, Sunday, that the witness whose testimony he sought, was at Abilene, Texas. He applied for no process and had no process issued for him on that date. It is not shown that he undertook to communicate with the witness to secure his attendance in any way whatsoever. That he merely applied for process for the witness on the next day, August 7, but that he had no process whatever issued for the witness on that day or any other day. That while the trial began on August 7, it was not concluded until August 9. What time of the day on August 9, we do not know. We must presume, under the authorities, that it occurred in the evening of that day. We have not a particle of doubt but that if process had been issued on either the 6th or 7th and promptly placed in the hands of the proper officer of Taylor County for said witness that he unquestionably could have procured his attendance so as to have testified either on the 8th or 9th days of August. Again, the record shows that the complaint and information in this case were filed against appellant on August 1, 1911. The record does not show when he was arrested; but not only from all the facts of this case, as the record clearly shows, but as he has not stated it otherwise in his application, under the authorities, we assume that he was at once arrested. In his application he says: "That at all times since this defendant has been *charged* with this offense he has been trying to ascertain the whereabouts of the witness; that this defendant never learned that said witness was in Taylor County until yesterday, which was Sunday the 6th day of August." The mere statement by him that "he has been trying" to ascertain the whereabouts of the witness is wholly insufficient. He must state the facts so that the court can tell whether his conclusion that he "has been trying" is correct. Of whom did he inquire? In what locality did he inquire? What day or days of the said time did he inquire, or seek to ascertain the location of the witness? From all the facts shown by this record, we are certain that the proper inquiry at the proper time and place for this witness would have given appellant the information in ample time to have secured his attendance. It was shown that the witness had lived in the county in a certain town

therein; that he was a barber. Doubtless his associates in the town and with whom he had worked, and his customers, if they had been applied to, could have readily, promptly and at once have given appellant the information of his whereabouts. Besides, if he had had process to Knox County, where he had lived issued, "when he was charged" with this offense, and placed in the sheriff's hands, doubtless the sheriff at once would have located, and appellant could have procured his attendance. The letter the witness is claimed to have written, is dated on August 2 and bears evidence in its face that the witness then knew of the prosecution in this case. He states in the letter that in about a week from that time he will be discharged from said sanitarium. Certainly if appellant had been as diligent to secure his attendance as he is insistent now, he could have been had as a witness without question before the trial began, or at least within the time the trial was pending, so as to have testified.

Appellant states in his motion for rehearing that an examination of the cases he cites will disclose that the diligence used in this case is much greater than the diligence used by the appellant in the cases he cites. He then proceeds to copy the long list of cases from subdivision 417, p. 422-3, of Buckler's Digest, but he nowhere and in no way attempts to show by any or either of these cases the diligence used nor that it was only such as used by him in this case. By searching the books he doubtless could have found a great many other cases and cited them where the diligence in them was shown to be sufficient, but we apprehend that in none of them was the lack of diligence so apparent and so clear and so unquestioned as the lack of diligence in this case. On the other hand, if we deemed it necessary we could cite a much larger number of cases than he copies from Buckler's Digest showing that such lack of diligence as is clearly evident in this case did not entitle the party to a continuance.

Again, appellant contends that the part of the original opinion in this case which "insinuates" that appellant is compelled to see that the process for his witnesses is issued by the clerk and delivered to the sheriff, is not the law of this State in any case, and all that is required by the law of appellant is for him to make his application to the clerk and inferentially if not directly he contends, then it becomes the duty of the clerk and the sheriff or some one else to do the rest.

The quotations from the opinions of some of the cases above, clearly show the reverse of appellant's contention. All of the authorities so hold. It is true he can not issue the process, but it is his duty to see that the clerk at once does so. It is also true that he can not serve the process, but it is his duty to see that it is at once placed in the proper officer's hands, and that that officer actually and promptly executes the process or by his return show he can not do so. This court, through Judge Ector, in Cantu v. State, 1 Texas Crim. App., 404, said: "The affidavit for continuance does not state the officer or person to whom, or at what time, said subpoenas were delivered.

For aught that is shown from the record the subpoenas may have been received by the person who returned them on the very eve of the trial . . .

"This court, in the case of Murray v. The State, ante p. 174, and in the case of Dill and Rice v. The State, ante p. 278, has decided that it is not a sufficient showing for a continuance for a defendant to state in his application that he has had an attachment issued for a witness by whom he could prove material facts in his defense, without stating the date when the same was issued, and the officer to whom it was delivered, and at what time it was delivered to him. See also the cases of Townsend v. The State, 41 Texas, 135; Van Brown v. The State, 34 Texas,. 186.

"In applications addressed to the discretion of the court it must clearly appear that the continuance was improperly refused before the judgment will be reversed. *Nothing is to be presumed in favor of an application for continuance, but the presumption must be that the party making it stated his facts as strongly as he could."*

Again, in Buie v. State, 1 Texas Crim. App., 455, this court, through Judge White, said: *"It has been repeatedly decided by this and the Supreme Court that it must be shown what was done with the process obtained for a witness; that it should be made to appear that it was placed in the hands of the proper officer if the witness resided in the county; and if he resided out of the county, then that it was forwarded, and how and when, to the proper officer there."* It is needless to cite or quote other authorities.

Of course, if the diligence used was insufficient under the law, then appellant was not entitled to a continuance and the court did not err in overruling it, it makes no difference what the witness would have sworn, nor whether his testimony was true, or not, nor whether the jury would, or would not have believed him. But appellant contends in effect that this court has no right to review the case and the evidence and to reach the conclusion that the testimony of the witness, even if it had been as claimed by appellant, was not probably true and would not have been believed by the jury. The spirit and the effect of the statute itself is the very reverse of this and so are all the decisions. The statute, Code Criminal Procedure, article 608, subdivision 6, expressly states the truth of the application shall be addressed to the sound discretion of the court and shall not be granted as a matter of right. And that where the defendant is convicted and the evidence of the absent witness was of a material character, and that the facts set forth in said application were probably true, then a new trial should be granted. Necessarily under this statute and all the decisions, the lower court must first pass upon, not only the materiality of the testimony of the absent witness, but the probability of its truthfulness, and if he denies a new trial, then this court must necessarily pass upon the question as it universally does. So held Judge Hurt in Mitchell v. State, 36 Texas Crim. Rep., 307, quoted supra, and as

said by Judge Davidson for this court in Wilkins v. State, 35 Texas Crim. Rep., 528: "The testimony of Dean, as set out in the application for a continuance, is material. But in passing upon the action of the court in overruling the motion for a new trial based upon this matter, we look to the fact as to whether the testimony was probably true. After reading the statement of facts carefully, we are of opinion that, if Dean had been present, no juror would have believed him if he had testified to the facts set out in the application. The testimony in the case, and all of the circumstances, and the quasi confession of the defendant, render it absolutely certain, to our minds, that his testimony is not probably true; and the court did not err in refusing to continue the cause."

It is unnecessary for us to again review the testimony, which shows, first, that in our opinion this witness would not have sworn to what the application claims he would have sworn to; second, that if he had, his testimony would probably not have been true; and third, if he had sworn it, it probably would not have changed the result of the trial. For further authorities see section 647, subdivisions 1 and 2, White's Ann. Code Criminal Procedure, pp. 414 and 415.

The term of court at which this trial occurred did not adjourn till September 2, 1911. Appellant did not appeal, nor enter into recognizance till August 30, 1911, 21 days after the trial concluded. He did not procure the affidavit in aid of his motion for new trial, or otherwise that said absent witness would testify what appellant said he would.

There is nothing else in the motion for rehearing that calls for any discussion, further than was said in the original opinion.

The motion is overruled.

*Overruled.*