E. D. BRADFIELD V. THE STATE.

No. 2926. Decided April 15, 1914.

Rehearing denied May 13, 1914.

**1.—Anonymous Letter—Sufficiency of the Evidence.**

Where, upon trial of delivering an anonymous letter, etc., the evidence sustained the conviction, there was no error on that ground.

**2.—Same—Indictment—Sending and Delivering.**

It was the undoubted intention of the Legislature not only to make it unlawful for any person to deliver or cause to be delivered any such letter, but also to send the same, and an objection to the indictment that no punishment attaches where the writer himself delivers such letter, is untenable, as the law does not exclude, but embraces one who delivers the letter or causes it to be delivered as well as one who sends or causes it to be sent.

**3.—Same—Complaint and Information—Words and Phrases.**

Where, upon trial of delivering an anonymous letter, etc., the information alleged said letter reflects, etc., an objection that the statute used the word, "reflecting," and that the information was therefore insufficient is hypercritical.

**4.—Same—Complaint—Information—Letter.**

Upon trial of delivering an anonymous letter to a female reflecting upon her chastity, etc., it was not necessary to copy the alleged letter in the complaint or information.

**5.—Same—Charge of Court—Misdemeanor.**

Where the complaint to the court's charge and the refusal of requested charges was not properly reserved by bill of exceptions, the same could not be considered on appeal in a misdemeanor case. Following Giles v. State, 66 Texas Crim. Rep., 638, and other cases.

**6.—Same—Evidence—Consent.**

There was no error in not permitting defendant's witness to testify that on the night before defendant delivered the alleged anonymous letter, the witness saw defendant hugging and kissing the prosecutrix, it not having been shown whether this was done with her consent or permission.

Vol. 73 Crim.-23.

Appeal from the County Court of San Saba. Tried below before the Hon. J. T. Hartley.

Appeal from a conviction of delivering to a female an anonymous letter reflecting upon her character, etc.; penalty, a fine of $250 and thirty days confinement in the county jail.

The opinion states the case.

*Walker & Burleson,* for appellant.—On question of insufficiency of indictment in not copying the letter: Huntsman v. State, 12 Texas Crim. App., 619; Hewitt v. State, 25 Texas, 722; Williams v. State, 12 Texas Crim. App., 395; Bryan v. State, 54 Texas Crim. Rep., 18, 111 S. W. Rep., 744; Curtis v. State, 31 Texas Crim. Rep., 39; Hansen v. State, 34 S. W. Rep., 929; Tynes v. State, 17 Texas Crim. App., 123; Lagrone v. State, 12 Texas Crim. App., 426; Ferguson v. State, 25 id., 451; Elkins v. State, 26 id., 220.

*C. E. Lane,* Assistant Attorney General, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted for delivering to Miss Alma Walker, a young 15-year-old girl, an anonymous letter, and his punishment assessed at the lowest prescribed by law.

The statute is: "Article 1182. If any person shall send, or cause to be sent, deliver, or cause to be delivered, to any other person any anonymous letter or written instrument of any character whatsoever, reflecting upon the integrity, chastity, virtue, good character or reputation of the person to whom such letter or written instrument is sent or addressed, or any other person, or wherein the life of such person is threatened, said person so sending such letter or written instrument shall be guilty of a misdemeanor, and, on conviction thereof, shall be punished by a fine of not less than two hundred and fifty dollars nor more than one thousand dollars, and by imprisonment in the county jail for not less than one month nor more than twelve months." The complaint and information allege: That on August 1, 1913, appellant "did then and there unlawfully send and deliver to Miss Alma Walker, an anonymous letter, typewritten in the Spanish or Mexican language, which said letter, according to its words and tenor reflects upon the chastity, virtue, good character and reputation of the said Miss Alma Walker, to whom said letter was sent and delivered and intended for."

The uncontradicted evidence shows that at the time and place alleged, appellant himself wrote and delivered to Miss Walker a typewritten letter in the Spanish or Mexican language, which reflected upon her in the particulars specified. No name was signed or written, thereto, except this: "From 5, 4, 2 in the alphabet." The figures 5, 4, 2 in the alphabet are the initials of appellant. The letter was produced, identified and introduced in evidence. It was shown to be in the Spanish or Mexican language. It was translated by two competent witnesses and without question reflected upon Miss Walker, as stated above.

Appellant contends that the indictment was invalid, because, under the terms of the statute, as he contends, no punishment was fixed where the writer himself delivers such letter, contending that because the article of the Code above quoted says said person so *sending* such letter shall be punished, and that the statute does not prescribe any punishment for one who himself *delivers* such letter.

In our opinion appellant's contention can not be sustained. We think that the true construction of said article, and the undoubted intention of the Legislature was, not only to make it unlawful for any person to deliver or cause to be delivered any such letter, as well as to send or cause it to be sent, and that where said Act says, said person so sending such letter, does not exclude but embraces one who delivers it or causes it to be delivered as well as one who sends or causes it to be sent.

The undoubted rule of construction applicable to this question is well established, as laid down by 2 Lewis' Sutherland Statutory Construction, secs. 589 and 590, as follows: "The modern doctrine is that to construe a statute liberally, or according to its equity, is nothing more than to give effect to it according to the intention of the lawmaker, as indicated by its terms and purposes. This construction may be carried beyond the natural import of the words when essential to answer the evident purpose of the act; so it may restrain the general words to exclude a case not within that purpose.

"There is no arbitrary form of words to express any particular intention; the intent is not identical with any phraseology employed to express it. Any language is but a sign, and many signs may be used to signify the same thing. In statutes, the sense signified is the law; the letter is but its servant or its vehicle. Language is so copious and flexible and when general words are used there is an absence of precision, and all words and collocations of words admit of more than one interpretation. In the construction of remedial statutes, while the meaning of the words is not ignored, it will be subordinated to their general effect in combination in a whole act or series of acts, read in the light of all the pertinent facts of every nature of which the courts take judicial notice. Liberal construction of any statute consists in giving the words a meaning which renders it more effectual to accomplish the purpose or fulfill the intent which it plainly discloses. For this purpose, the words may be taken in their fullest and most comprehensive sense. Where the intent of the act is manifest, particular words may have an effect quite beyond their natural signification in aid of that intent." But, in addition to this common law rule of construction, our own statutes and decisions especially are applicable. Article 25, Code Criminal Procedure, is:

"The provisions of this Code shall be liberally construed, so as to attain the objects intended by the Legislature: The prevention, suppression and punishment of crime."

Article 5502 (3268) of our Revised Civil Statutes is: "The following rules shall govern in the construction of all civil statutory enactments: . . . . 6. In all interpretations the court shall look diligently for the

intention of the Legislature, keeping in view at all times, the old law, the evil and the remedy." As frequently held by this court, said article of the Revised Statutes "though embraced in the Civil Statutes, is in our opinion, equally as applicable and of binding force in criminal prosecutions." Murray v. State, 21 Texas Crim. App., 620. To the same effect are articles 9 and 10 of the Penal Code. Taking all these together, it is clear, as has frequently been held by this, and our Supreme Court, that all penal statutes shall be liberally construed and that the old, or common law rule that they will be strictly construed has been abrogated. The Road cases, 30 Texas, 503; Ex parte Gregory, 20 Texas Crim. App., 210; Ex parte Garza, 28 Texas Crim. App., 381.

In Chapman v. State, 16 Texas Crim. App., 76, this court said: "When the intention of a statute is plainly discernible from its provisions that intention is as obligatory as the letter of the statute, and will even prevail over the strict letter. Brooks v. Hicks, 20 Texas, 666; Forshey v. Railroad Co., 16 Texas, 516. A thing which is within the intention of the makers of a statute is as much within the statute as if it were within the letter, and a thing which is within the letter is not within the statute, unless it be within the intention of the makers. Holmes v. Carley, 31 N. Y., 289; Chase v. Railroad Co., 26 N. Y., 523. In construing a statute, the principal object should be to arrive at the intention of the Legislature. Such construction ought to be given the statute as will best answer the intention which its makers had in view. Whenever the intention can be discovered, it ought to be followed, although it may seem to be contrary to the letter of the statute. People v. Utica Ins. Co., 15 Johns. (N. Y.), 358, 380 (8 Am. Dec., 243); Sedg. on Con. and Stat. Law, p. 225 et seq.; Potter's Dwarris on Stat., p. 174 et seq."

In Sartain v. State, 10 Texas Crim. App., 651, this court said: " 'Courts are not confined to the literal meaning of the words employed, in the construction of statutes, but as was said in Burgett v. Burgett, 10 Rep., 221, the intention of the lawmakers may be collected from the cause or necessity of the act; and statutes are sometimes contrary to the literal meaning of the words. It has been decided that a thing within the letter was not within the statute, unless within its intention. The letter is sometimes restrained, sometimes enlarged, and sometimes the construction is contrary to the letter. 4 Bac. tit. Statute, 1, secs. 38, 45, 50. Every statute should be construed with reference to its object, and the will of the lawmakers is best promoted by such a construction as secures that object and excludes every other.' Castner v. Walrod, 83 Ill., 171; Walker v. State, 7 Texas Crim. App., 245."

In Whisenhunt v. State, 18 Texas Crim. App., 491, this court said: "It is a well-settled rule of statutory construction 'that the intent and meaning should be followed, although it may seem to be contrary to the letter of the statute' Sedgwick on Statutory Construction, 256. 'Statutes are to be construed according to the intentions of the makers, if these can be ascertained with reasonable certainty, although such con-

struction may seem contrary to the ordinary meaning of the letter of the statute.' Id., p. 313; 4 Cush. (Mass.), 314; (Wilson v. Ireland), 4 Md., 444."

In Albrecht v. State, 8 Texas Crim. App., 314, this court said: "If a reasonable construction of the language would tend to effectuate this purpose (the legislative intent), and another construction, equally as reasonable, would have a contrary tendency, under well established canons of construction, courts should not hesitate in choosing the former to the exclusion of the latter. Intention frequently controls express language in the construction of a statute. Walker v. State, 7 Texas Crim. App., 245." "The intention of the Legislature in enacting a law is the law itself." Edwards v. Morton, 92 Texas, 152.

It is needless to cite the many other decisions from this court and our Supreme Court to the same effect.

Appellant's other objection to the complaint and information is, because they allege said letter "reflects" upon the chastity, virtue, good character and reputation of the said Miss Alma Walker, whereas, the statute says "reflecting." This is very hypercritical and, of course, presents no cause to hold the pleading bad.

Another contention of appellant is that the complaint and information are fatally defective in that they do not contain the said letter. In our opinion it was unnecessary to copy the letter in either the complaint or information. Article 470, Penal Code, prescribes that if any person shall go into or near any public place, etc., and shall use loud and vociferous or obscene, vulgar or indecent language, swear or curse or yell or shriek, etc., in a manner calculated to disturb the inhabitants, shall be fined, etc. This court expressly held in Foreman v. State, 31 Texas Crim. Rep., 477, that it was unnecessary to allege what the language was; that following the statute was sufficient. In Jones v. State, 35 Texas Crim. Rep., 565; Glass v. State, 23 Texas Crim. App., 425, and Satchell v. State, 1 Texas Crim. App., 438, this court held that in prosecutions for the fraudulent disposition of mortgaged property, it was not necessary that the indictment set out the mortgage by its tenor, or by an exhibited copy.

Article 453, Code Criminal Procedure, is: "The certainty required in an indictment is such as will enable the accused to plead the judgment that may be given upon it, in bar of any prosecution for the same offense."

Article 460, Code Criminal Procedure, is: "An indictment for any offense against the penal laws of this State shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment."

Article 474, Code Criminal Procedure, is: "Words used in a statute

to define an offense need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning, or which include the sense of the statutory words."

It has many times been held by this court that when an indictment charges the offense substantially in the language of the statute this is all that is necessary. Judge White says: "It will generally be sufficient if the indictment follows the exact words of the statute and it is rarely ever safe to depart from them." Sec. 344, subd. 2 of his C. C. P., Ann.

In his motion for new trial, appellant has some complaints to the court's charge and he also requested one charge which was refused. These matters are not raised in such a way that this court is authorized to review them, under a uniform and large number of decisions. Giles v. State, 66 Texas Crim. Rep., 638, 148 S. W. Rep., 317; Mealer v. State, 66 Texas Crim. Rep., 140, 145 S. W. Rep., 353; Cabiness v. State, 66 Texas Crim. Rep., 409, 146 S. W. Rep., 934; Gowans v. State, 64 Texas Crim. Rep., 401, 145 S. W. Rep., 614; Smith v. State, 65 Texas Crim. Rep., 658, 145 S. W. Rep., 918; Luttral v. State, 64 Texas Crim. Rep., 411, 142 S. W. Rep., 588; Perkins v. State, 65 Texas Crim. Rep., 311, 144 S. W. Rep., 241; Golden v. State, 66 Texas Crim. Rep., 262, 146 S. W. Rep., 945; Yarbrough v. State, 66 Texas Crim. Rep., 324, 147 S. W. Rep., 270; Milam v. State, 66 Texas Crim. Rep., 249, 146 S. W. Rep., 185; Gamble v. State, 66 Texas Crim. Rep., 297, 146 S. W. Rep., 551; Staten v. State, 63 Texas Crim. Rep., 592, 141 S. W. Rep., 525. Sec. 813, subd. 6, Wh. C. C. P.

Appellant complains that the court would not permit his witness, Miss Viola Matlock, to testify that on the night before appellant delivered to Miss Walker said letter, she, the witness, was returning from church in company with Rick Woods and that about a mile and a half from the church she saw defendant hugging and kissing Miss Walker. We think there was no error in excluding this testimony. It was not sought to show by this witness that appellant hugged and kissed Miss Walker with her consent or permission. If he did without her permission or by force such conduct, in no event, would have reflected on Miss Walker. On cross-examination by appellant, Miss Walker testified that she did not let the defendant so treat her the night before, or any other time and his letter to her would indicate that if he attempted to so mistreat her, she resented it and he bore marks of her resentment on his person, for he said to her in the letter, "Dog gone, but I have a blue spot where you hit me tonight."

We have not taken up, in the order presented by appellant, his contentions, or each of them, separately, but we have considered them all and they are embraced and passed upon by what we have said in this opinion. There is no reversible error shown and the judgment will be affirmed.

*Affirmed.*

[Rehearing denied May 13, 1914.—Reporter.]