# Commonwealth *v.* Keystone Graphite Company, Appellant.

*Taxation—Commonwealth taxes — Lien — Discharge — Public sale—Judicial sale—Lien enforceable.*

A public foreclosure sale by a trustee of a mortgage which provided that such sale should take place in case of default in payment of interest, and that at such sale the purchaser should take a clear title and the trustee should pay out of the proceeds all "taxes, assessments, insurance premiums and other charges thereon," is not a judicial sale and a tax lien filed by the Commonwealth a week before such sale is enforceable against the purchaser.

Argued Feb. 9, 1915. Appeal, No. 392, Jan. T., 1914, by defendants, from judgment of C. P. Chester Co., Jan.

T., 1913, No. 48, on verdict for plaintiff in case of Commonwealth of Pennsylvania v. Keystone Graphite Company, with notice to Hiram C. Himes, Charles L. Reid and Edmund B. Seymour, trustees for the bondholders of New Philadelphia Graphite Company, terre tenants. Before BROWN, C. J., POTTER, ELKIN, STEWART and FRAZER, JJ. Affirmed.

Sci. fa. sur tax lien.

The facts appear by the following opinion by JOHNSON, P. J., specially presiding:

On June 9, 1905, A. C. Spencer conveyed by deed to the New Philadelphia Graphite Company certain real estate in the County of Chester, Pennsylvania, and took in payment certain bonds secured by a mortgage given to the Union Trust Company as trustee.

This mortgage contained the following provisions: "If any default shall be made by the company in payment of the principal or in interest of said bonds, or any of them when due, according to the tenor thereof, and of this indenture or if said company shall fail to make the yearly payment to the sinking fund required by Section 12 of this indenture, or shall fail faithfully to observe and perform any of the requirements imposed upon it by said bonds and coupons, or by this indenture, and such default or failure shall continue for the period of six months after written notice thereof has been given by the trustee or its successors to the company, then and thereupon it shall and may be lawful for the trustee or its successors, upon, the written request of the holders of not less than 60 per centum in amount of the bonds then outstanding and unpaid, to proceed to sell at public auction unto the highest bidder all and singular the property real and personal, rights and franchises and privileges hereby conveyed, transferred, set over or pledged or intended so to be, that shall then be subject to the lien, operation and effect of this indenture, and pledged with the appurtenances and benefits of

the equity and redemption of the company, its successors. or assigns therein. Such sale shall be made by the trustee or its successors their company or companies, in the City of Philadelphia after ten days' notice of the time and place of sale shall be given by the trustee or its successors by publication in such newspaper or newspapers as shall be required by the laws of New Jersey and in at least two daily newspapers published in the City of Philadelphia once in each week for not less than six consecutive weeks, together with such other notice, if any, as may be required by law, and the trustee or its successors without further advertising such sale made by announcement made at the time and place fixed by publication, or at an adjourned sale from time to time for such period or periods as may be advisable and upon such sale and receiving the purchase-money therefor, it shall be lawful for the trustee or its successors to convey, assign, transfer and set over the property real or personal rights, franchises and privileges so sold the purchaser or purchasers thereof and such sale and conveyance, transfer or assignments shall convey, transfer or assign all the right, title, estate, property and interest of the company of, in and to the said property real and personal, rights, franchises and privileges to the purchaser or purchasers thereof absolutely and forever, free, clear and discharged of and from any and all the provisions and conditions hereby created without liability on the part of the purchaser or purchasers to see to the application or disposition of the purchase-money, and shall be a perpetual bar, both in law and equity against the company, its successors and against all and every person claiming or to claim the same or any part thereof under it forever, and the receipts of the trustee or its successors for the purchase-money shall be a sufficient discharge to the purchaser or purchasers of all or any part of the property real and personal right, franchises or privileges so sold."

Also article 10 which reads as follows:

"The proceeds of any sale under the provisions of this mortgage shall be applied by the trustee or its successors first to the payment of the cost and expenses of such sale, including reasonable compensation to the trustee or its successors, its agents, attorney and counsel and all expenses, liabilities and advances made or incurred by or under the authority of the trustee or its successors in connection with the trusts hereof, and all taxes, assessments, insurance premiums and other charges thereon, second, to the payment of the whole amount of the principal and interest then owing or unpaid upon said bonds, or any of them whether said principal by the default of said bonds be then due or yet to become due, and in case such proceeds are insufficient to pay in full the amount of the principal and interest then owing and unpaid upon said bonds the same shall be paid ratably upon all of said bonds then owing or unpaid without preference to any bond over any of the others of them, or of interest over principal, third, to pay over the surplus if any, on demand to the company, the successors or assigns, or as any court of competent jurisdiction may direct."

On October 26th, 1905, the New Philadelphia Graphite Co., executed a deed of trust to the said Union Trust Company.

This deed contained the following: "In trust nevertheless to, for and upon the uses, intents and purposes as set forth in the mortgage or deed of trust hereinbefore recited, and none other, and subject to all the provisos, conditions, limitations and agreements of the same as fully to all intents and purposes as though said provisos, conditions, limitations and covenants and agreements were herein set forth in full or at large."

The above mortgage and deed describe all the lands covered by the mortgage and against which the liens were filed.

On June 5th, 1907, The New Philadelphia Graphite

Company by deed conveyed these lands to The Keystone Graphite Co., under and subject to the mortgage held in trust by the Union Trust Company.

December 14th, 1910, the Commonwealth of Pennsylvania filed in the Court of Common Pleas of Chester County a tax lien for tax on capital stock amounting to one thousand three hundred and fourteen dollars and eighty-four cents.

About a week after the filing of these liens the trustee by virtue of the authority set forth in the mortgage sold the property to the bondholders for $5,000.00.

Sci fas were issued on the lien, and on the trial the court directed the jury to render verdicts for the Commonwealth.

A motion was made for judgment in favor of the defendants notwithstanding the verdict, and motion for a new trial.

The contention of the defendant is that the tax liens were divested by the sale under the mortgage and therefore there can be no recovery on the liens.

In our view the sale by the trustee under the terms of the mortgage in no way affected the tax liens.

We are not convinced that the direction of the court to the jury to render a verdict for the plaintiff was error.

Verdict for plaintiff for $1,746.54 and judgment thereon. Defendants appealed.

*Error assigned* was in discharging defendant's motion for judgment non obstante veredicto.

*Edmund Bayly Seymour, Jr.,* with him *Arthur P. Reid,* for appellants.

*Isabel Darlington,* with her *Thomas S. Butler,* for appellee.

PER CURIAM, March 1, 1915:

The Commonwealth had an unquestioned right to file

its claim in the court below for the unpaid tax due it by the Keystone Graphite Company. The sale by the trustee in the mortgage, about a week after the lien was filed, in no manner affected it, for that sale was not a judicial one. This was the correct view of the learned judge below, specially presiding, and the judgment is accordingly affirmed.