Commonwealth, Appellant, *v.* Lowe Coal Co.

Argued March 18, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Wm. S. Rial,* with him *Cyrus E. Woods,* Attorney General, and *H. E. Marker,* for appellant.—It is clear beyond all question that the Commonwealth may declare taxes a first lien and give priority to such taxes: Parker's App., 8 W. & S. 449; Dungan's App., 88 Pa. 414; Anspach & Stanton's App., 112 Pa. 27; Lewis v. L., H. & P. Co., 62 Pa. Superior Ct. 282; Harper v. Rubber Co., 284 Pa. 444; Schoyer v. Oil & Ref. Co., 284 Pa. 189.

The sheriff's sale did not divest the Commonwealth's lien for taxes against the Lowe Coal Co., in view of the 32d section of the Act of 1889, which declares that no judicial sale of a corporation's property shall be "valid" until the Commonwealth's taxes have been paid: De Treville v. Smalls, 98 U. S. 522; Schoyer v. Oil & Ref. Co., 284 Pa. 189.

*James S. Beacom,* with him *Paul S. Barnhart* and *Samuel M. Ankney,* for appellee.—It is a well settled general rule of law that a judicial sale divests every lien that is not saved from divesture by some statute.

After the acknowledgment and delivery of a sheriff's deed it is too late, in the absence of fraud, to set the sale aside: Cooper v. Wilson, 96 Pa. 409; Evans v. Maury, 112 Pa. 300.

The sale is either valid or it is not valid. If it is a valid sale then the purchaser took a title divested of all

liens under the well-known principles above recited. If it is not a valid sale, then he took no title at all, but we cannot see how that question can be decided in a proceeding of this kind. The validity of titles cannot be raised in a collateral proceeding and must be tried out and decided either by an action of ejectment or a bill in equity.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 15, 1929:

This is an appeal by the Commonwealth from a judgment against it in a proceeding instituted by the Auditor General to collect capital stock taxes from the Lowe Coal Company, hereinafter sometimes called defendant, with notice to John W. Scott, terre-tenant of certain real estate of that corporation, purchased by him at sheriff's sale.

In August, 1919, the Auditor General settled capital stock taxes, amounting to $110.32, against defendant. This claim, with thirteen others, for various state taxes due by defendant, was filed with the prothonotary of Westmoreland County. In November, 1921, judgment was entered against defendant in a suit (not connected with the present tax claims) brought by John W. Scott et al.; a fi. fa. issued on that judgment, and, November, 1923, the real estate of the coal company was sold at sheriff's sale to the present terre-tenant for one dollar and costs. The Commonwealth's tax claims were filed with the sheriff prior to this judicial sale. July 30, 1927, a sci. fa. issued on each of the claims, including the instant one, to which the terre-tenant filed an affidavit of defense alleging that he had purchased the premises here in controversy at a judicial sale and took title discharged of all liens; he asked that the court determine whether, under the circumstances, the Commonwealth had the right to judgment against him on its sci. fa. A rule for judgment for want of a sufficient affidavit of defense was denied, and the court below, being of opin-

ion that a decision of the question of law raised by the pleadings would govern the controversy, ordered judgment for the terre-tenant and against the Commonwealth; the case was determined accordingly, and this appeal followed.

The broad question involved is not whether taxes due the Commonwealth are divested by a judicial sale of the assessed property when the fund realized is sufficient to pay them, but whether so much taxes as are not paid, because of insufficiency of the fund, are discharged; or, to state the proposition in another way, whether, in such instances, the lien for such unpaid taxes remains, notwithstanding the judicial sale. And the concrete question is, whether the Commonwealth's lien, for capital stock taxes against the real estate of defendant corporation, was divested by the present judicial sale, which realized a sum insufficient to pay any part of such taxes.

The legislation particularly involved is the Act of June 1, 1889, P. L. 420, entitled "An act to provide revenue by taxation." Section 31 (p. 427) states that taxes imposed by the act shall be a lien on all real and personal property of the corporation assessed, and that, in case of a judicial sale of such property, "all taxes due the Commonwealth" shall be first paid out of the proceeds before other claims and liens. Section 32 provides, inter alia, that "No corporation......made taxable by this act, shall hereafter be dissolved by the decree of any court of common pleas, nor shall any judicial sale be valid or a distribution of the proceeds thereof be made until all taxes due the Commonwealth have been fully paid into the state treasury."

Appellant contends that section 32 of the Act of 1889 is sufficient in itself to save the present claim from discharge,—no part of the tax which it covers having been paid out of the fund realized from the judicial sale of the coal company's property; appellee on the other hand, contends there is nothing in the act which can be given that effect.

Section 32 of the Act of 1889 seems never to have been construed in connection with the question now before us. Appellee points to Commonwealth v. Keystone Graphite Co., 248 Pa. 344, 348-9, and Commonwealth v. Keystone Graphite Co., 257 Pa. 249-51, wherein it was held that the sale there involved,—on a mortgage dated subsequent to the Commonwealth's claim for taxes,—"not being a judicial sale, did not divest the plaintiff's lien." This, however, is far from a ruling that, had the sale in question been a judicial one, the Commonwealth's claim for taxes would have been discharged. The two Graphite decisions, like all others which we have examined, contain no ruling which controls the present case.

Our decisions show that, where no act of assembly provides to the contrary, a lien for local taxes may be entirely discharged by a judicial sale, even where the proceeds of the sale are insufficient to pay the claim in full (Hopkins v. Rettinger, 230 Pa. 192, 194-7); but, unless particularly ordained by fundamental law or otherwise, general rules,—whether of the written or unwritten law,—governing the rights of municipalities and local political subdivisions given taxing powers by the State, do not necessarily apply to the State itself, where such rules would adversely affect its interests, and especially is this so where, under any other doctrine, an interest in the nature of a prerogative right would be divested: see 36 Cyc. 1171-2, section 11. Therefore, decisions in cases of local taxes, and statements of general principles to be found in judicial opinions disposing of such cases, do not control one like the present, which involves taxes due the sovereign state. State taxes stand on a different basis from local levies; the former are essential to the very "preservation" of the State itself (Schoyer v. Comet O. & F. Co., 284 Pa. 189, 193), while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the

sovereign authority requires the direct revenues of the Commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise.

In Harrisburg v. Orth, 6 W. N. C. 121-2, President Judge PEARSON of the Dauphin County Court well said: "It is assumed that in [Pennsylvania] a sheriff's sale divests all liens whatsoever; this we apprehend is a mistake." Though the body of our Pennsylvania law, written and unwritten, contains many recognitions of the fact that a judicial sale divests liens not saved by some act of assembly, yet there is no constitutional provision to that effect and research discloses no statute providing it as a general rule,—much less as a rule applicable to unpaid state taxes. The recognitions to which we refer all involve only local taxes; the discharge of a lien for such taxes would accord with our general policy, to deliver to a purchaser at sheriff's sale a title free of encumbrances, and would in no way adversely affect the revenues of the Commonwealth. The question is, When the direct revenues of the Commonwealth will be diminished, is the lien of *unpaid* state taxes discharged by a judicial sale?

The state tax here involved is made a first lien on the corporate property in controversy by section 31 of the Act of 1889. See also section 1 of the Act of June 15, 1911, P. L. 955. As we have seen, section 32 of the Act of 1889 provides that no "judicial sale" shall "be valid" until "all taxes due the Commonwealth have been fully paid." This provision,—inserted in, and thus changing the language of a part of a prior statute reënacted by the Act of 1889,—appears for the first time in the latter statute. It cannot be viewed in the way suggested by the court below, as a mere enlargement of section 31, for, first, that part of the act is plain and calls for no elaboration or elucidation, and, second, because "it is an elementary rule of statutory construction that a change of language indicates a change of legislative intent":

Ogilvie's Est., 291 Pa. 326, 333. Section 32 is quite different from 31, and the divergence of language which occurs indicates a dissimilarity of intent between the two. The provision under particular consideration must be viewed as representing a distinct thought, intended, like many other features of the act, to be collaterally helpful in carrying out the main legislative purposes stated in the statute's title, "to provide revenue" for the Commonwealth, since only in this light is the provision germane to the substance of the act.

In construing the part of the statute with which we are now dealing, it is well to keep in mind that the word "valid" has a meaning "legally sufficient or efficacious" (Bouvier's Law Dictionary, page 3387), and also that the act is not one with special reference to liens or to sheriff's sales; its purpose is to raise revenue by taxation. With the purpose of the statute in mind, the meaning of section 32 becomes reasonably clear. Its words are, "nor shall any judicial sale be valid......until all taxes due the Commonwealth have been fully paid"; and, since the prime intent of the present provision, like all other provisions of the act, is to help raise revenue,—not to regulate the validity of judicial sales,—these words may properly be read, in accord with appellant's contention, to mean that a judicial sale, until challenged by the Commonwealth, passes title to the purchaser, but no such sale is valid, in the sense of being legally effective, to discharge a lien for unpaid taxes due the Commonwealth, and thus prevent the latter from properly enforcing its claim. Hence, in each instance, the purchaser takes property so acquired subject to the right of the Commonwealth to question the validity of the sale by pressing its claim for taxes; or, in other words, subject to a lien for so much of the taxes as are not paid out of the fund realized at the sale.

The provision in question must be read either in the manner just indicated or literally, and the latter course would mean that a judicial sale which failed to produce

a fund sufficient to pay all state taxes in full would be utterly void. Of course, if the present sale were to be ·held void, the terre-tenant would have no case, and, on this ground, judgment would go for the Commonwealth; but that construction ought not to be adopted, because, in many instances,—namely, in all cases where the fund realized, while insufficient to meet the Commonwealth's claim in full, would pay part of it,—such a reading of the provision would defeat the avowed purpose of the act, "to provide revenue." Where, on a reasonable interpretation, a statutory provision is susceptible of a construction which will carry into effect the avowed purpose of the act, that construction should be given to it, rather than one which in practical operation might defeat such purposes: Bradfield v. State, 73 Tex. Cr. R. 353, 357, 166 S. W. 734, 736, and the quotation from Albrecht v. State, 8 Tex. App. 314, 315, there recited. As this court said in Commonwealth v. Wilkes-Barre, 258 Pa. 130, 136, "A statute will not be construed so as to defeat the object of the legislature if it can reasonably be avoided; literal construction of the language of a part of an act of assembly cannot prevail if another interpretation is fairly deducible which will better effect the manifest purpose of the general legislative intent."

If it be contended that the construction which we have adopted in effect supplies words not found in the act, the reply is, we have simply interpreted the words of the particular provision in the light of the whole statute and the avowed purpose expressed in its title; a "primary rule of construction......is that, in applying a statute, the first duty of the court is to ascertain and give effect to the intention of the legislature" (Vonot v. Hudson Coal Co., 285 Pa. 385, 392-3), and, when "necessary.....to effectuate a plain legislative intent,..... additional......words [may be] interpolated": Catlin v. Pickett & Co., 262 Pa. 351, 354.

To summarize: Section 31 of the Act of 1889 was enacted (practically in the words of prior legislation: see

section 14 of Act of June 7, 1879, P. L. 112, 119) so that (as theretofore) state taxes should be a lien, and a first lien, on the property of corporations; while the part of section 32 in which we are particularly interested was enacted for the purpose of showing a legislative intention, coinciding with relevant general principles of government, that judicial sales of property subject to such liens should not be "valid," or, in other words, should not be legally effective, to discharge *unpaid* state taxes. The Act of 1889 is a supplement to the Act of 1879, and reënacts many of the provisions of the latter, in some instances adding new matter. Section 32 of the Act of 1889 is section 15 of the Act of 1879, with certain additional words inserted; among others, those with which we are here dealing. This accounts for the somewhat clumsy way in which the legislative thought is expressed; but when the purpose of the statute is kept in mind, the concrete thought intended,—that a sheriff's sale of corporate property should be legally effective only to discharge the lien of state taxes to the extent that such taxes are paid out of the fund realized by the sale,—sufficiently appears. In the present case, the fund produced was not enough to pay any part of the Commonwealth's claim; hence an enforceable lien for all state taxes represented by the claim in controversy continued to exist on the property involved.

The judgment of the court below is reversed and judgment is entered for the Commonwealth.