## Commonwealth ex rel. Dick v. Blaker

*William K. Rhodes, Albert B. Maris* and *Matthew Randall,* for petitioner. *Howard Kirk,* for respondent.

MacDADE, J., June 30, 1933.—This proceeding comes before us upon a petition for a writ of alternative mandamus, upon which this court made an order, dated June 16, 1933, that a writ of alternative mandamus forthwith issue, directed to the said Clyde Blaker, registry assessor of the third precinct of the fourth ward of the Township of Upper Darby, commanding him to show cause why he should not receive the certificate of enrollment of Archibald Dick and enroll him upon the original registry list of the said precinct for the year 1933, as a member of the Democratic Party, the said writ being made returnable on June 23, 1933, at 10 a. m.

It may be correctly stated, as we determine the same from a persual of the said petition, that the relator, Archibald Dick, is:

1. A qualified elector of the said third precinct of the fourth ward of the Township of Upper Darby, in the County of Delaware.

2. That he resides at 296 Lamport Road in said precinct.

3. That the defendant, Clyde Blaker, is the registry assessor of the said precinct and duly qualified as such.

4. That the relator, in the year 1932, was duly assessed and enrolled as a voter of the said election precinct upon the original registry list thereof and enrolled upon said registry list as a member of the Republican Party.

5. That, during the course of his canvass of the said election precinct between the first and fourth Mondays of May last past, the defendant, Clyde Blaker, as registry assessor, visited the relator's dwelling house while the relator was absent therefrom and, after inquiry, assessed and registered the relator as a voter of the said election precinct upon the original registry list of the said precinct for the year 1933, and continued his enrollment as a member of the Republican Party, in accordance with his enrollment for the year 1932, leaving at the relator's residence a blank certificate of enrollment.

These averments in the petition are not denied by answer filed by the defendant upon the return day of the said writ of alternative mandamus, and accordingly we find them as facts undisputed.

6. We assume as true that the relator, having voted for a majority of the candidates of the Democratic Party at the general election of 1932, and, desiring to change his party enrollment to the Democratic Party, did, on June 12, 1933, fill in and sign at his home in the presence of William Cunningham, a voter of the said precinct, a certificate of enrollment in the form required by the Act of Assembly of July 25, 1913, P. L. 1043, and the said certificate was thereupon signed by the said William Cunningham as a witness. A copy of the said certificate of enrollment is as follows:

"CERTIFICATE OF ENROLLMENT

"Date: June 12, 1933.

"I, Archibald Dick, a duly qualified voter residing in Upper Darby Twp., fourth ward, third election district, hereby declare that I desire to be enrolled as a member of the Democratic party and express my desire to vote the ticket of the said party at the primary election next ensuing, and request that my name be enrolled on the assessor's list as a member of said party for the purpose of participating in said primary or primaries.

"Signature of elector: ARCHIBALD DICK.

"Address: 296 Lamport Rd.

"Witness: WM. CUNNINGHAM.

" (For instructions see other side).

[Back of Certificate]

"If voter has not been enrolled as a member of a stated party or wishes to change the party, this certificate must be filled out, dated and signed by the voter, giving the name of party politics and address and have a witness sign also.

"If the voters do not wish to give this information they need not do so, and can vote at the election but cannot vote for any party candidates at the primary.

"After this Certificate is properly filled out and signed it must be returned to the registry assessor on or before the said assessor sits at the polling place on the sixty-second and sixty-third days before the primary."

However, defendant does not admit this by reference to his answer.

7. The petition also avers that the relator thereupon, on the same day (June 12, 1933), requested and authorized the said William Cunningham to

deliver the said certificate of enrollment to the defendant, Clyde Blaker, as registry assessor of the said precinct, for the purpose of having the said change of enrollment entered upon the original registry list of the said precinct. This is not admitted by the answer.

8. Another averment is that the said William Cunningham, who was personally known to the defendant, Clyde Blaker, thereupon, on June 12, 1933, delivered the said certificate of enrollment to the said Clyde Blaker, registry assessor of the said precinct, at his residence therein, and on behalf of the relator requested him to change the enrollment of the relator from Republican to Democratic upon the original registry list of the said precinct, in accordance with the said certificate of enrollment.

(The defendant in his answer admits that he was personally acquainted with the said William Cunningham referred to above and that, on June 12, 1933, the said Cunningham handed to defendant a certificate of enrollment purporting to be signed by the relator, Archibald Dick, but that the defendant has no knowledge whether or not said relator, Archibald Dick, actually signed said certificate of enrollment. However, defendant admits that said Cunningham requested him to change the enrollment of relator from Republican to Democratic Party.)

9. In the said petition, the relator further avers that the defendant, Clyde Blaker, as registry assessor, refused to receive the said certificate of enrollment or to change the enrollment of the relator upon the original registry list of the said precinct from Republican to Democratic in accordance with the relator's wish and in accordance with the said certificate, averring particularly that, under the provisions of the Act of Assembly of July 25, 1913, P. L. 1043, he was not entitled to receive or record the certificate of enrollment unless it was delivered to him by the relator, the signer thereof, personally.

(This the defendant admits too in his answer.)

10. Whereupon, the relator, stating that he is without adequate and specific remedy at law, avers he is advised, believes, and avers that the action of the defendant, Clyde Blaker, in refusing to receive his enrollment certificate from the hand of relator's agent, William Cunningham, is illegal and in violation of his duty under the Act of July 25, 1913, P. L. 1043, and that said action of defendant violates the right of the relator to be enrolled as a member of the Democratic Party upon the original registry list of the third precinct of the fourth ward of the Township of Upper Darby, of which he is a qualified elector.

Wherefore he prays for a writ of alternative mandamus directing the said Clyde Blaker, registry assessor of the third precinct of the fourth ward of the Township of Upper Darby, to show cause why he should not receive the said certificate of enrollment and enroll the relator, Archibald Dick, upon the original registry list of said precinct for the year 1933 as a member of the Democratic Party.

Upon the filing of the answer or return, as aforesaid, the relator filed a demurrer, setting up that the return or answer is defective and not sufficient in law to preclude the Commonwealth from having the writ of peremptory mandamus commanding the said Clyde Blaker to receive the certificate of enrollment of Archibald Dick and enroll him upon the original registry list of the third precinct, fourth ward, Upper Darby Township, for the year 1933, as a member of the Democratic Party.

## Discussion

Mandamus is a highly prerogative and remedial writ, the appropriate functions of which are the enforcement of duties to the public, by officers and others,

who either neglect or refuse to perform them: Commonwealth ex rel. v. The Commissioners of Allegheny County, 37 Pa. 277.

And for failure to perform a public duty enjoined upon a board, such as Registration Commissioners of Pittsburgh, mandamus will generally lie: Hutchinson v. Goshorn, 256 Pa. 69.

The right by mandamus is a strictly legal one, and the applicant must establish a specific legal right as well as the want of a specific remedy: Douglas v. McLean, 25 Pa. Superior Ct. 9.

And, though a prerogative writ and demandable of right in a proper case, is not of course but rests in the sound discretion of the court; and will be granted only in extraordinary cases where there would otherwise be a failure of justice: The Councils of Reading v. The Commonwealth ex rel., 11 Pa. 196.

Under the positive rulings aforesaid, it would appear to us that this relator has not a full, adequate, and specific remedy at law. A writ of mandamus should lie whenever the petitioner can show a clear legal right in himself, a corresponding duty imposed on the respondent, and a want of any other adequate and specific remedy: Commonwealth ex rel. v. Barker, 211 Pa. 610; Commonwealth ex rel. v. Baker, 212 Pa. 230; Homan v. Mackey et al., 295 Pa. 82.

Has this relator met these requirements? For the writ will not be awarded in a doubtful case, and if his legal right is not shown clearly, or it does not show that the respondent is under a corresponding duty, or that there is no other adequate and specific remedy, the writ should be refused.

And also whenever a statute gives power or imposes an obligation on a particular person to do some particular act or duty and provides no specific legal remedy for nonperformance, the court, in order to prevent a failure of justice, will grant the writ to command the doing of such act or thing: Douglas v. McLean, 25 Pa. Superior Ct. 9.

But mandamus will not lie to compel the performance of an illegal act: Commonwealth ex rel. v. Ripple, Mayor, 4 Luz. L. R. Rep. 59; for the courts have no jurisdiction to compel by mandamus a public officer to do any act which the law does not impose upon that officer a duty to perform, or to discharge the functions of his office in a manner not authorized by law, or to do anything which the law does not expressly or by necessary implication require him, as an officer, to do.

The courts cannot impose duties upon public officers; the function of the writ of mandamus is to enforce duties imposed by law: Davis v. Patterson, Treasurer, et al., 12 Pa. Superior Ct. 479.

While, in the absence of any other efficient remedy, mandamus lies to enforce the performance of a ministerial duty which involves the exercise of neither discretion nor of official judgment: Miller v. Henderson, 212 Pa. 263; yet, if it appears that the officer has abused his judgment or discretion, or has taken an erroneous view of the law as applicable to the admitted facts, the writ will issue to compel action according to law: Commonwealth ex rel. v. Woodward, County Controller, 84 Pa. Superior Ct. 124; Johnson v. State Board of Veterinary Medical Examiners, 46 Pa. Superior Ct. 279.

Therefore, with this background, which convinces us that we have jurisdiction in the matter, the relator, so far as the present proceeding is concerned, is the mover. He sets in motion the proceeding under the Act of July 25, 1913, P. L. 1043, which provides:

"Section 3. In all election districts (other than in cities of the first, second, and third classes) the assessor or registry assessor shall, within forty-five days after the approval of this act, make an enrollment of each voter residing within the district in which he is authorized to make an assessment and registration of voters; and thereafter, at the time of making the annual assessment, in addi-

tion to the duties now authorized and required by law, make an enrollment of all the voters in his district. Said assessor or registry assessor shall leave at the residence of each and every voter in his district, found to be absent when his residence is visited by the assessor or registry assessor, at the time of making the annual assessment, a certificate of enrollment, which shall be in the following form:

### CERTIFICATE OF ENROLLMENT.

Date,....................191.....

I..............................., a duly qualified voter residing in........ ................election district, hereby declare that I desire to be enrolled as a member of the................................party, and express my desire to vote the ticket of the.....party at the........................... primary election next ensuing, and request that my name be enrolled on the assessor's list as a member of said party for the purpose of participating in said primary or primaries.

.................................
(Signature of Elector.)

Witness,..........................    ............................
(Address.)

"The above certificate of enrollment shall be furnished to each assessor or registry assessor by the county commissioners of the various counties, at the time of the delivery of said assessors' books by the county commissioners.

"Section 4. The assessor or registry assessor making the enrollment, in districts other than in cities of the first, second and third classes, shall ascertain, if possible, at the time of making the annual assessment, by personal inquiry of the elector, the party politics, preferences or affiliations of the elector, and note and record the same, with the residence and other particulars required in making the assessment; and in case the elector is not at his residence at the time the said assessor or registry assessor visits the residence of the elector, he shall leave a certificate of enrollment which the elector may fill out and give to the assessor or registry assessor at some time prior to or on the sixty-second or sixty-third day preceding each primary, at which time said assessor or registry assessor shall sit at the polling place and receive said certificate; at which time the same shall be recorded by the assessor or registry assessor in the register.

"Section 5. The county commissioners shall have the register so prepared as to permit the assessor or registry assessor to insert the party enrollment of each elector. Upon the receipt of the certificate of enrollment from the elector, the assessor or registry assessor shall insert in the register, after said elector's name, his party enrollment: Provided, however, If an elector has at any time received party enrollment under the provisions of this act, it shall be the duty of the assessor or registry assessor to insert in the said registry, from year to year, at the time of making the annual assessment, said party enrollment, after the name of the said elector, until such time as a certificate of enrollment is presented to or filed with him by the said elector to a contrary effect. Each elector, not already enrolled, desiring to participate in the primaries, must file with the assessor or registry assessor his enrollment certificate. If an elector does not desire to vote at a primary election, he shall not be required to sign or execute the above certificate as to his party affiliation or membership, and such party affiliation shall not be recorded."

Under these requirements, he must evidence:

1. That the relator is a qualified elector in the third precinct of the fourth ward of the Township of Upper Darby.

2. That he resides therein.

3. That the respondent is a registry assessor of the said precinct.

4. That the relator was duly assessed and enrolled as a voter in the said precinct upon the original registry list as a member of the Republican Party for the year 1932.

5. That the respondent as registry assessor duly assessed and enrolled the relator as a voter in said precinct upon the original registry list for the year 1933 as a member of the Republican Party.

6. That the relator was absent from his residence when the said registry assessor called in the performance of his duties as such between the first and fourth Mondays of May 1933, and assessed and enrolled the relator in the original registry list for the year 1933.

7. That the said registry assessor therefore, in view of relator's absence, left a blank certificate of enrollment in the form as prescribed by the Act of July 25, 1913, P. L. 1043.

8. That the said certificate of enrollment was filled out by the relator and signed at his home in the presence of one William Cunningham, a voter of said precinct who subscribed to the same.

9. That relator voted for a majority of the candidates of the Democratic Party at the general election of 1932, and desired therefore to change his party enrollment to the Democratic Party.

10. That relator requested and authorized the said William Cunningham to deliver the said certificate of enrollment to Clyde Blaker, the said registry assessor, for the purpose of a change of enrollment as aforesaid.

11. That the said William Cunningham who was personally known to respondent, did, on June 12, 1933, deliver the said certificate of enrollment to the said registry assessor, at the latter's residence, and he did request the latter to change the enrollment of relator from Republican to Democractic upon the original registry list of the said precinct in accordance with the said certificate of enrollment.

12. That the said registry assessor refused to receive the said certificate of enrollment or to change the enrollment of relator upon the original registry list of said precinct from Republican to Democratic, in accordance with relator's wish and in accordance with the said certificate of enrollment.

13. That the said registry assessor refused for the reason that, under the provisions of the Act of July 25, 1913, P. L. 1043, relator was not entitled to receive or record the said certificate of enrollment unless it was delivered to him (respondent) by relator, who signed the said certification of enrollment, personally.

These, therefore, with the proofs, resolve themselves into the immediate—

### Questions Involved

1. In refusing to receive relator's enrollment certificate from the hand of relator's agent, William Cunningham, under the facts as established, did this respondent perform an unlawful act and violate his duty as a registry assessor under the Act of July 25, 1913, P. L. 1043?

2. Did the action of the registry assessor violate the right of the relator to be enrolled as a member of the Democratic Party upon the original registry list of the third precinct of the fourth ward of the Township of Upper Darby, of which he is a qualified voter?

3. Did the said registry assessor err in his interpretation of the law when he refused to accept the certificate of enrollment and change the enrollment, as relator wished, upon the ground that, under the provisions of the Act of

July 25, 1913, P. L. 1043, relator was not entitled to receive or record the said certificate of enrollment unless it was delivered to him (registry assessor) by relator, who signed the same, personally?

Undoubtedly it is the right of this elector to be enrolled under the party affiliation of his choice, and is a privilege which goes to the very foundation of our government and is not lightly to be refused or restricted for mere technical reasons or for partisan advantage. However, this court has no jurisdiction to compel by mandamus a registry assessor to do that which an act does not impose upon him a duty to perform, or to discharge the functions of his office in a manner not authorized by law, or to do anything which the law does not expressly or by necessary implication require him, as such, to do. The courts, as we have said heretofore, cannot impose duties upon public officers, for the function of this writ is to enforce duties imposed by law: Davis v. Patterson, supra.

However, if the registry assessor herein has taken an erroneous view of the law as applied to the above admitted facts of this case, the writ will be awarded: Douglas v. McLean, supra.

Therefore, we have before us a test case, seeking a decision of the court to furnish a guidepost whereby registry assessors may halt for guidance and instruction, whether they are legally bound to accept a certificate of enrollment from the hands of third parties or whether they have the legal right to insist that the elector desiring to enroll must hand such certificate showing such desire to the registry assessor in person.

This registry assessor has been acting in good faith in this matter. His position is one of great delicacy and responsibility, and he acted wisely in requiring sound construction of this act and in requesting to be informed of his duties under the provisions of the Act of July 25, 1913, P. L. 1043. We think all public officers, in all matters affecting their duties, should pause and hesitate, in doubtful cases, until light from some quarter shall come; and they should not take upon themselves unnecessarily duties which do not belong to them. We do not understand this registry assessor to be standing here in opposition to the law: Commonwealth ex rel. v. Cuncannon et al., 3 Brewst. 344.

The Act of July 25, 1913, P. L. 1043, sec. 4, 25 PS § 294, requires a registry assessor making the enrollment of electors to make personal inquiry of each elector in his precinct as to party politics, preferences, or affiliations of said elector and to note and record the same. Said section also provides that in case the elector is not at his residence at the time of the visit of the registry assessor, the assessor shall leave a certificate of enrollment: "which the elector may fill out and give to the assessor or registry assessor at some time prior to or on the sixty-second or sixty-third day preceding each primary, at which time said assessor or registry assessor shall sit at the polling place and receive said certificate; at which time the same shall be recorded by the assessor or registry assessor in the register."

Section 5 of said act provides, inter alia, that if an elector has received at any time party enrollment: "it shall be the duty of the assessor or registry assessor to insert in the said registry, from year to year, at the time of making the annual assessment, said party enrollment, after the name of the said elector, until such time as a certificate of enrollment is presented to or filed with him by the said elector to a contrary effect. Each elector, not already enrolled, desiring to participate in the primaries, must file with the assessor or registry assessor his enrollment certificate."

The proceedings are wholly statutory and no power or duty rests upon this

registry assessor, except as is prescribed by statute: Nolan v. Farr et al., 294 Pa. 139.

In this case, as an illustration of following provisions of this act strictly, it was held by the Supreme Court, in the matter of purging a list of electors, where petitions were presented to the local board of registration commissioners to strike certain names of registered voters frm their list: "The proceeding to purge the list being purely statutory should have been strictly pursued."

In that case, the right of petitioners to proceed by petition was denied, for such procedure was not embraced within the terms of the act of assembly. It has been said further:

"The Supreme Court has no inherent common-law powers in an election case, but only such powers as are expressly conferred by the statute": In re Lacey, 227 App. Div. 673, 236 N. Y. S. 421.

In construing such a statute as this, we are not unmindful that it is the settled rule of interpretation, announced in the textbooks and confirmed by judicial decision, that when the words of the statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the object and remedy in view; and the intention is to be taken or presumed, according to what is consonant with reason and good discretion: Williams v. Rheas Incorporated, 99 Pa. Superior Ct. 438, 442.

And, as the Supreme Court said—and we are bound to accept the same—in Commonwealth v. Lowe Coal Co., 296 Pa. 359, 367—"Where, on a reasonable interpretation, a statutory provision is susceptible of a construction which will carry into effect the avowed purpose of the act, that construction should be given to it, rather than one which in practical operation might defeat such purposes: Bradfield v. State, 73 Tex. Cr. R. 353, 357, 166 S. W. 734, 736, and the quotation from Albrecht v. State, 8 Tex. App. 313, 315, there recited. As this court said in Commonwealth v. Wilkes-Barre, 258 Pa. 130, 136, 'A statute will not be construed so as to defeat the object of the legislature if it can reasonably be avoided; literal construction of the language of a part of an act of assembly can not prevail if another interpretation is fairly deducible which will better effect the manifest purpose of the general legislative intent.'"

See also In re Foster's Petition, 243 Pa. 92, 98, 59 C. J. 943, sec. 563 et seq., and Commonwealth v. Blackman, 82 Pa. Superior Ct. 362.

In the latter case, it was contended that the fifteenth and eighteenth sections of the Act of March 27, 1923, P. L. 34, were contradictory and that the latter section should prevail over the early one. The court held that both sections must be given effect if possible, and said (p. 365).

"It is the spirit of the law rather than the literal expression which should guide the court in ascertaining the legislative will and the whole statute should be taken in view when inquiry is made as to the construction of a particular portion thereof. The presumption is that all parts of the act were intended, and effect must be given to all unless there is such antagonism as makes such construction impossible. The language of any part of an enactment must be read in the light of the whole of it. Where words of a statute are susceptible of two constructions, one of which is unreasonable and the other not so, the latter interpretation must be adopted even though it be a liberal one. The generality of one portion is not to be construed to conflict with another if by reference to other portions they can be harmonized and given due effect for the purpose intended."

Reading that part of section 5 of the Act of 1913 which reads: "until such time as a certificate of enrollment is presented to or filed with him by the said elector to a contrary effect" (wherein the elector desires to change his enroll-

ment for valid reason, as in the instant case), together with that portion of section 4 of the same act which reads: "which the elector may fill out and give to the assessor or registry assessor . . .", we can see no good legal reason for not accepting these provisions at their face value, for the presumption is that all parts of the act were intended, and effect must be given to all unless there is such antagonism as makes such construction impossible. The language of this act must be read in the light of the whole of it.

The language thus quoted above is not inconsistent and treats entirely of different situations: The one (section 4) for the elector to fill out the blank certificate of enrollment and give to the registry assessor; and the other (section 5) requiring the elector to fill out a certificate left at his home because of absence when the registry assessor called and to present the said certificate thereafter within the statutory period or file the same with the registry assessor by the said elector, to the contrary effect (that is, if he desires to change his party enrollment from that recorded by the said registry assessor). Why was not the same language used here which is used in the Act of July 10, 1919, P. L. 857, sec. 22, which provides for a change of enrollment of political designation before registrars? A person may appear before them to change the enrollment. The Act of 1913, supra, does not require a personal application before the registry assessor. This is significant.

It would seem that prior to the Uniform Primary Act the party affiliation of the voters was passed upon by partisan election officers but that was done away with by the act referred to above. The legislature therefore had in mind the partisan enrollment of the electors when it passed the Act of July 25, 1913, P. L. 1043, and it knew that it had made a very sharp distinction between the registry of electors in the cities of the first, second, and third class and those in townships and boroughs.

In the former cases, the elector must appear in person before a registry board to insure his right of franchise, and therefore could at that time very conveniently indicate and register his or her party affiliation.

In the other cases, the old method of registration by assessors was continued manifestly for the convenience of the electors who live in country districts and would have to travel long distances if personal registration were required. The legislature accordingly provided a convenient and common-sense method of registration of party affiliation, by directing the assessor while making the assessment to inquire of the elector in what party he or she wished to be registered. The legislature also realized that the assessor would come in personal contact with comparatively few of the electors and so provided means of party registration by certificates of enrollment. The certificates are directed to be left at the residence of the elector, if he be absent, and if he wishes to enroll as a partisan he may "fill out and give" the assessor the certificate.

Did the legislature intend that if the assessor found the elector at home an oral declaration would be sufficient, while a written instruction would be necessary if the voter afterward called upon the assessor? This seems to us to be absurd but if the elector does not appear in person and his certificate of enrollment is presented in lieu of his presence, should not the assessor satisfy himself in good faith, in the exercise of judgment and discretion, that the certificate of enrollment is genuine and complies with the provisions of the said act of assembly? The same reasoning would apply to the presentation or filing of a certificate of enrollment if a change of party enrollment be desired by the elector (relator).

Certainly the right to do by an agent that which may be done in person is clearly established by law.

In Mechem, Agency, sec. 80, it is said: "It is the general rule that an agency may be created for the performance of any lawful act, and that whatever a person may lawfully do, if acting in his own right and in his own behalf, he may lawfully delegate to an agent.

"This general rule applies, ordinarily, as much to acts done under a statute, or by the authority of a statute, as to any other class of acts."

See: People ex rel v. Traeger, Sheriff, 338 Ill. 101, 170 N. E. 214; Finnegan v. Lucy, 157 Mass. 439; In re Kirk, 66 Misc. 535, 123 N. Y. Supp. 1061.

In the last case, a mandamus was granted to compel registration of a voter who signed his name in ink where the statute required a dark pencil.

In Jermyn's Election Expenses, 57 Pa. Superior Ct. 109, an account of election expenses was filed with the clerk of quarter sessions instead of being presented in open court, as required by the Act of March 5, 1906, P. L. 78. This was held to be a reasonable compliance with the act and within the intention of the legislature.

In that case it was said (p. 115): "It is a well-settled rule of construction that the legislature will be presumed to have intended what is reasonable and effectual, and not what is productive of absurd or anomalous consequences or is incapable of execution."

In Johnson's Nomination, 27 Dist. R. 710, the question of the qualification of a signer to a nomination petition arose and, discussing those qualifications, the court pointed out the difference between the registration of voters in cities of the first, second, and third class, and voters in other districts of the State.

The court in its opinion said: "The enrollment in districts in cities under party affiliations is made personally by the elector under oath . . . while in the other districts in the state it may be made by the registration assessor upon inquiry of the elector, or by the elector through an appropriate certificate".

The court in the latter case practically recognizes the right of registration by the elector without personal appearance.

It has been the custom and practice in this county and other counties, ever since the passage of the Act of 1913, as far as we have been advised, for the assessor to accept the certificate of enrollment without compelling the elector to present it in person. This usage and practice is of weight in determining the meaning of the act: 59 C. J. 1023, sec. 608; Leh's Contested Election, 6 Dist. R. 152; Steiner et al. v. Coxe, 4 Pa. 13; Kunes et al. v. McCloskey et al. 115 Pa. 461.

It is usual, in the payment of poll taxes at least, and the act of assembly provides for an elector, in order to qualify to vote, to sign a written order to another to pay his taxes to the collector, and verification of the signature is not required nor is proof of agency required. This is for the convenience of the voter: Act of July 15, 1897, P. L. 276, sec. 2.

Nevertheless, too great a burden should not be placed upon the assessor. He cannot be required to be familiar with the signature of every elector in his precinct, and to place the assessor under the obligation to make personal inquiry of the elector as to the verity of his signature, when a certificate of enrollment is handed to him by a third person, would enlarge his duties as assessor and place upon him a burden of responsibility perhaps not contemplated by the statute, but proof of agency in the third person might be required to present the certificate to or file it with the assessor. At least, the assessor should be satisfied by investigation.

The law contemplates that the voter himself shall assume the responsibility of seeing that he is properly registered on the election lists.

In re Partisan Registration, 65 Pitts. 705, 707 (1917), the court said: "He [the elector] should do everything he can, exercise every proper care on his part, and make due application to the assessor, before appealing to the court. He may apply to the assessor at any time prior to the sitting of the latter at the polling place, at which latter time he has special opportunity for seeing if he is properly registered, and, if not, for having it attended to".

And again in Assessor's List of Voters, 10 Dist. R. 624, it was said by Judge Wiltbank: "The duty of the assessor, therefore, is to make a list of voters, and, after doing so, to correct and perfect his list according to the results not only of his investigation but also of applications to him of men who may demand that their names be added, or that names shown to be improperly thereon shall be stricken off. . . .

". . . A resident in a division who desires the list corrected by the addition of his name may well be required to present himself in person. It has been, in effect, said by the Court of Common Pleas of this county, in a consideration of that provision of the Act of Jan. 30, 1874, P. L. 31, which was similar to the requirement under discussion, that no doubt the legislation was broad enough to admit of a man's sending notice by another in the case of his illness or like extremity: Arnold, J., in the matter of the Applications to Add Names, &c., &c., 41 Legal Intell. 5. There is no cogent reason why third parties should volunteer to have a voter's name added when the voter himself does not show diligence in his own behalf, and, from all that appears by his inaction, he has no wish in the premises. . . .

". . . The system created for Pennsylvania meets all the requirements of a free, full, safe and unprejudiced exercise of the right to vote, and of the right to protect one's vote from the illegal voting of others. Every citizen finds in his immediate vicinage a competent quasi-tribunal in the sittings of the assessors already described, open to him at four sessions in a public place on two days immediately before the lists are filed with the county commissioners, and may there exhibit, according to circumstances, omissions or improper listings."

The burden is upon the elector to see that his name is properly enrolled, and we believe that the Act of 1913, supra, is broad enough to admit of a man's sending his certificate of enrollment to change his party affiliation by another in such a case as this, where the elector is frequently absent from home because of imperious business engagements.

Under such circumstances, a registry assessor should not insist upon a delivery by the elector in person, but, if not so delivered in person voluntarily by the elector who desires to change his party enrollment to the registry assessor, the latter should be satisfied after inquiry in good faith and as a reasonably prudent man would act in his own affairs that the elector signed it and authorized the delivery of it to him, the registry assessor. Of course, this question is one for the said assessor to pass upon.

Our opinion is that he should not receive a certificate from anyone other than the elector purporting to sign it, unless he is satisfied that it is signed by and delivered to him by authority of the elector. The registry assessor should not insist on a personal delivery by the elector if he knows or is satisfied after inquiry in good faith that the elector signed and authorized the one delivering a certificate to deliver it. On the other hand, the registry assessor should not accept a certificate of enrollment without more. In such case he would not only be justified in refusing it but should refuse it, unless and until he is satisfied (not capriciously or by fraud) then or within a reasonable time after its presentation that it is signed by the elector or by his authority and is presented to or filed with him (the registry assessor) by the elector.

The petition herein does not aver that the registry assessor knew the signature of the elector, nor that he knew that the certificate of enrollment was being delivered by authority of the elector. Whether the assessor in question was justified in refusing to accept the certificate of enrollment—because it was not delivered by the elector in person (and this is not necessary)—is beside the question now. However, if a writ of peremptory mandamus is issued on the facts averred, the case would be a precedent for the proposition that the mere delivery of a certificate of enrollment by one who signed as a witness, without more, makes it obligatory upon the assessor to change the elector's enrollment. We are advised dehors the record that this registry assessor knows at this writing that the elector did sign and authorize the delivery of the said certificate of enrollment, but it is not averred that he did in the petition filed.

Therefore, we make the following order: And, now, June 30, 1933, the matter of a hearing, by oral arguments and briefs, coming on to be heard by the court en banc upon a petition for peremptory mandamus, together with rule thereon, return, and demurrer, after due consideration thereof, the court doth order, adjudge, and decree:

1. That the rule for issuance of a writ of peremptory mandamus, granted to the relator against the said Clyde Blaker, registry assessor of the third precinct of the fourth ward of the Township of Upper Darby, County of Delaware, Pa., to show cause why he should not change upon the original registry list for 1933 the enrollment of Archibald Dick, the relator, as a Republican to Democrat, be and is hereby discharged, sec. reg. et sec. leg.

2. That the said petition be and is hereby held in abeyance pending a decision by the said registry assessor within 10 days whether he shall change the enrollment as prayed for.

3. That if the said registry assessor fails to act as aforesaid or change the enrollment as prayed for, this relator may apply to this court for an alias rule for peremptory mandamus, which rule, when granted and due hearing held thereon, shall be made absolute, if the relator proves his signature and authority to present to and file with the said registry assessor the said certificate of enrollment by one William Cunningham.

4. That if the enrollment is changed, as prayed for, by the said registry assessor within the said period of 10 days, then and in that case only the said petition be and is hereby dismissed.

5. The petitioner is to pay the costs of this proceeding.

## Decree

And now, July 21, 1933, the defendant, Clyde Blaker, having filed a supplemental return setting forth that he has made inquiry of William Cunningham, the agent of the relator, Archibald Dick, and is satisfied that the certificate of enrollment delivered to him by the said William Cunningham on behalf of the said Archibald Dick was signed by the said Archibald Dick, and that the said William Cunningham was authorized by the said Archibald Dick to deliver the same to him, the said Clyde Blaker, registry assessor of the third precinct of the fourth ward of the Township of Upper Darby, and further setting forth that he, the said Clyde Blaker, has accordingly changed the party enrollment of the relator, Archibald Dick, from Republican to Democratic, upon the original registry list of the said precinct as prayed for in the petition for a writ of alternative mandamus filed in this case, it is, upon motion of Howard Kirk, Esq., attorney for the defendant, ordered, adjudged, and decreed that the petition for a writ of alternative mandamus filed in this case be and the same is hereby dismissed. From William R. Toal, Media, Pa.