## Parsons *against* Allison.

A collector's warrant is not a lien upon the personal property of one by whom taxes are due.

ERROR to the common pleas of *Centre* county.

Amicable action wherein David Allison was plaintiff and A. V. Parsons and others, assignees of Curtz & Hepburn, were defendants, in which the following facts appeared by a special verdict.

April 27th, 1833, the commissioners of Centre county made out the duplicate for county and state tax of Lamar township in said county; which was delivered to David Allison, Esq., collector, the above plaintiff, in June 1833.   In the said duplicate, the firm of Curtz & Hepburn were taxed, amounting to 35 dollars 71 cents. The said collector proceeded to demand the said taxes which were not, and are not yet paid ; that on the premises of Curtz & Hepburn was personal property sufficient for the payment of said taxes.

On the 31st day of July 1835, John Curtz and James Hepburn, the firm of Curtz & Hepburn, made an assignment to the said A. V. Parsons, T. Coryell and Saul M'Cormick of all their property, real, personal and mixed, for the payment of their debts; which was recorded on the 3d day of August 1835, in the county of Lycoming, and on the 26th of August in Centre, including the property in Centre and Lycoming county.   That the said assignees have procured the said property to be duly appraised on the 6th and 7th of August 1835, and the appraisement and bond, with the proper sureties have been filed according to the provisions of the act of assembly regulating assignments in the county of Lycoming, and the whole property, real and personal, taken into their possession.

The question to be decided is, whether the plaintiff is entitled, by virtue of his duplicate, to be paid out of the personal property aforesaid, the amount of the said taxes before stated ?   If the court are of opinion in the affirmative, then judgment to be entered for plaintiff for 35 dollars 71 cents, otherwise judgment for defendants; and if the plaintiff has a right to seize the personal property for the taxes, the judgment to be for plaintiff, otherwise for defendants.

[Parsons v. Allison.]

The court below rendered judgment for the plaintiff.

Errors assigned.

1. The court erred in deciding that the property of the defendants, under the facts disclosed in the case stated, was liable to seizure by the collector.

2. The court erred in rendering judgment for the plaintiff below.

*Parsons*, for plaintiff in error.

The question raised in this cause is, whether a collector of taxes, by virtue of his duplicate, has a specific lien on the personal property of the individuals charged in his duplicate, with the payment of a tax? because if he has not, then there was manifest error in the opinion of the court below. For the property being transferred *bona fide*, and possession delivered, the persons against whom the taxes were assessed, ceased to be the owners; and if the collector had no lien before the transfer of the property, then his right of seizure was gone the moment the property was sold.

If there is a lien by virtue of a collector's warrant, it must be created by our acts of assembly, because no common law rule gives such superior claim. The fifteenth section of the act of the 11th of April 1799, *Purdon* 138, prescribes the manner of collecting the tax. It first requires that a demand shall be made, and then if any person shall neglect or refuse payment within thirty days from the time of such demand, it shall be the duty of the collectors to levy the said tax by distress and sale, &c., &c., and for want of goods to take the body, &c. Now this act creates no specific lien until after distress made, and consequently so far as any provision here is made if a *bona fide* sale takes place of an individual's property, the right to distrain that property has unquestionably ceased.

The act of the 11th of March 1822, *Purdon* 153, provides, that in cases where warrants have issued by the commissioners to the collectors of county taxes, such warrants shall be good and valid against the persons in their respective duplicates owing any county tax, for three years after the date of the warrant. This act clearly creates no lien—it only extends the time when a levy of distress may be made by virtue of a warrant: it confers no greater powers than the act of the 11th of April 1799. And clearly the legislature never intended that a collector should have it in his power to prevent any person, against whom he had a tax, from selling his personal property for a period of three years; or, if one should buy his neighbour's horse two years after a tax was assessed, that a collector could levy upon it for taxes. For, if the warrant creates a lien, then, if a Centre county man should sell a load of iron in Philadelphia, which he had on hand when the tax became due, the collector could go to the city and seize it in the hands of the iron merchant with his warrant, which surely would not be tolerated. And a voluntary assignment, made according to law, is of the same validity as a sale for cash.

V.—K

And if a warrant creates such lien, then it would interrupt the course of administration of the goods of a deceased person who happened to die without paying his taxes.

There is one other act of assembly to which I will call the attention of the court, although the facts in the case stated seem to me to render it inapplicable here. I refer to the act of the 3d of April 1804, section six, which provides that every tenant who may or shall occupy or possess any lands or tenements, shall be liable to pay the taxes which, during such occupancy or possession, may thereon become due and payable; and further gives the remedy of the tenant against the landlord.

In this case the taxes became due in the year 1833, consequently they did not become due during the occupancy of the plaintiffs in error, and the act of assembly creates no liability for any other taxes.

And in the second place the relation of landlord and tenant did not exist; and I deny that, in any case, where there is a tenancy, either for life, years, at will, or by sufferance, has the collector any claim.

That act restricted the right to the collector to go only against the tenant; and the legislature, by the act of the 15th of April 1834, *Pamph. L.* 518, and in the forty-sixth section of the act say, that goods and chattels of any person occupying any real estate, shall be liable to distress and sale for the payment of taxes during his possession or occupancy. In this act the legislature have not confined it to the tenant, but authorise a levy to be made on the goods of the occupier.

The laws regulating the collection of taxes, contemplate prompt payment, and give a remedy that facilitates that object; and if a collector will stand by for two years, and in the mean time the person against whom a tax is charged sells his property: let such collector abide the consequences; and in this case he is like all other creditors, he can come in for his share under the assignment; but to give him a preference would be downright injustice.

*Potter*, for defendant in error.

The point at issue is, whether under the facts stated, and the provisions of the several acts of assembly, the defendant in error had authority to levy the tax, by distress, out of the goods and chattels remaining on the premises, and transferred by their voluntary assignment, to the plaintiff in error.

The act of the 11th of March 1822, 7 *Smith* 507, provides, "That the collectors, respectively, or their legal representatives, be authorised and shall have full power to collect said taxes at any time within three years after the date of such warrant, in the same manner and with like effect, as they could or might have done at any time previous to the expiration of the time limited in said warrant." The warrant issued to the defendant in error was dated on the 27th of April 1823, and is within the three years specified as

the period of vitality in the act. The second section of this act prohibits the institution of any suit, by a collector, for the recovery of a tax duly assessed. The mode of recovery is limited to the manner provided by the various statutes. To them we must recur. To arrive at a proper construction, the whole provisions contained in the several acts for the collection of taxes must be taken into view as they constitute a system. The fifteenth section of the act of 1799, directs the collector to " demand" the payment of the tax, and provides, that in case of neglect or refusal to pay within thirty days thereafter, the collector shall " levy the said tax by distress and sale of the goods and chattels of said delinquent." Under the provisions contained in this section, connected with the first section of the act of 1822, there can be no doubt of the authority of the collector to have levied on the goods and chattels on the premises, unless the assignment precludes him. Does it do so? If the property had been sold, for a full and valuable consideration, to an innocent purchaser, the possession delivered, and the property removed, it would present a very different case. Then the indulgence of the officer to the delinquent, would have resulted in a direct injury to an innocent person. This the law would not endure. Nay, if the property had been removed from the premises, on which, and with which, it was assessed and taxed, it possibly might make some difference. But it remains on the premises, in the possession of the trustees of Curtz &. Hepburn, and for their use and benefit, the surplus of the proceeds, after payment of the debts, to be paid over to them. The delinquents had a reversionary interest in the property; it was used and occupied by their trustees, in conducting Lamar Furnace, for their benefit. Then, in truth, and in fact, the goods and chattels were beneficially in the possession of the individuals, in whose names the tax was assessed. The sixth section of the act of the 3d of April 1804, is worthy of consideration, inasmuch as it makes a tenant on lands liable for taxes assessed before his occupancy, provided they fell due during the period he was in the possession. Thus showing that, in the view of the legislature, property remaining on the premises, or the occupancy of land, renders the liability for taxes more extensive than when it is removed, or when the taxes fall due after the occupancy had ceased. The case of Baskin et al. *v.* Kantz and another, turns on the question of lien. There the judge below decided, " that the warrant of the commissioners to the collectors, was a lien upon the personal property of the person charged with the payment of taxes, for three years." This the court reversed, and rightly, because the acts of assembly do not make it a lien. On the warrant, a lien attaches at the time the levy is made and the property seized and taken in execution by the collector. Had the collector authority to levy? this is the true question in the case before the court. That he had, is abundantly clear, from an examination of the acts referred to.

The warrant issued by the commissioners, first required the col-

lector " to demand and receive the amount charged. Second, it required that on a day certain, the collector should meet the commissioners to correct mistakes; again, the collector is to demand payment, and if not paid within thirty days after demand, he is to levy the tax. And lastly, he is required to settle the whole amount of the duplicate in three months after the date of the meeting. The time seemed too limited, and it was, in numerous instances, impossible for collectors to succeed in collecting and paying over the whole amount of the duplicate, in the time specified. A practice then crept in, by which collectors sued delinquents in their own name, and recovered the taxes. This led to great litigation and accumulation of costs. To relieve the collector, and put an end to a vicious practice, the act of 1822 extended the time to three years from the date of the warrant, during which the collector should have power and authority to levy and make seizure under the warrant.

PER CURIAM.—A collector's warrant, unlike a *fieri facias* which binds the goods from its delivery—formerly from the teste—has not the common law 'incident of lien. Annually to tie up the chattels of a country while the taxes are in a course of collection, would be an insufferable annoyance; and before the legal existence of it can be admitted, something very explicit ought to appear in the laws supposed to inflict it. To enforce payment, however, no more is given to the officer than a power to distrain, which implies not the existence of a lien before distress made. As betwixt landlord and tenant, it required a statute to render a removal of the goods effectual to evade the right of distress; and even then, an exception is made in favour of purchasers, without notice. The very point before us, however, was determined in 1832, at Sunbury, in Fitzsimmons' administrators *v.* Kontz & Hummel,(a) a case not reported.

Judgment reversed, and judgment now rendered for the defendants below.

(a) The case referred to, differing somewhat in its circumstances, is here inserted.—
*Reporter.*

John Baskin and John App, administrators of David Fitzsimmons, deceased, *v.* Christian Kontz and Benjamin Hummel.

Amicable action, in which the following facts are submitted to the court in the nature of a special verdict.

David Fitzsimmons died in December 1831. The taxes on his real and personal estate remained unpaid for the years 1830 and 1831. Christian Kontz was appointed collector of county tax for the year 1831, for Penn's township, where Fitzsimmons resided, and received his duplicate in the month of May 1831, in which duplicate David Fitzsimmons was taxed 28 dollars 19 cents, and also a warrant to the said Christian Kontz, to collect the said taxes (*pro ut warrant.*) That the said Christian Kontz demanded the said sum of 28 dollars 19 cents, county tax, according to law, which was not paid. Plaintiffs are administrators of the said Daniel Fitzsimmons, and filed their inventory of his personal estate the 1st day of January 1832. Afterwards, on the 21st day of January 1832, the said Christian Kontz distrained an ark, being part of the estate of said deceased in the plaintiffs' hands and included in their inventory for the county tax aforesaid, and has sold the same in pursuance of said distress, for the sum

of 41 dollars, which money still remains in the hands of said *Kontz.* Benjamin Hummel was in like manner appointed collector of county tax for the same township, for the year 1830, and the duplicate was delivered to him in 1830, in which David Fitzsimmons was taxed 13 dollars 89 cents, or thereabouts, and a warrant for the collection of the said tax. That the said Benjamin Hummel demanded the tax aforesaid of the said David Fitzsimmons, according to law, which was not paid on the 21st day of January 1832; the said Benjamin Hummel distrained the ark aforesaid, for the said tax of 1830, 13 dollars 89 cents, subject to the distress of Kontz for the tax of 1831.

If the court should be of opinion that the distress, both of Kontz and Hummel, is illegal, then it is agreed that judgment be entered for plaintiffs for 41 dollars. If the court should be of opinion that the distress of both is legal, then judgment for defendants generally. If either distress is legal, judgment to be entered accordingly.

Upon this special verdict the court below rendered a judgment for the defendants.

*Merrill,* for plaintiffs in error.
*Bellas,* for defendants in error.

The judgment was reversed and a *venire facias de novo* awarded on the ground that the collector's warrant was no lien.