## In re Belman et al.

John A. Moss, for Commonwealth; Zieber & Snyder, for exceptant.

SHANAMAN, J., October 17, 1932.—The tax debtor was the proprietor of gasoline stations and as such owed to the Commonwealth taxes under the Act of May 1, 1929, P. L. 1037, taxing the sale of liquid fuels. The taxes had been reduced to judgment and were a lien upon all the property of the debtor (sec. 12), but were never distrained for (sec. 14). The debtor sold the stations, leases, and equipment in bulk under and in compliance with the Sales in Bulk Act of May 23, 1919, P. L. 262. The purchaser paid into court the proceeds, which amounted to about one third of the listed debts. The Commonwealth claimed a priority for its account. The auditor denied the priority, and we sustained the State's exceptions to his distribution, and awarded the Commonwealth a

priority in distribution. The auditor has filed an amended report in accordance with our decision, to which exceptions have been filed. The same question of law is presented, and we have had the benefit of further argument and additional briefs.

The property sold was personal property. The proceeds in money are in court. No mortgage or other lien interests are involved, and the question is simply whether the Commonwealth has a priority under its lien for taxes or must take as a common creditor as against the common creditors.

Counsel objecting to the Commonwealth's priority have consistently urged that the lien on the goods sold existed in the absence of distraint and was not divested by the sale in bulk, which admittedly is not a judicial sale, and that the fund is therefore free of the lien. In view of the fact that the sale is not a judicial sale, a creditor, even if he retained a lien upon the goods sold, would appear to be free to claim at least as a common creditor against the moneys of his debtor to be distributed by the court, as contended by the present exceptant. Therefore our statement in our former opinion that exceptant's contention that the lien on the goods subsists after transfer, if valid, is equally potent to debar the Commonwealth from sharing at all in the proceeds, appears to be exceptionable. It was, however, a mere "aside" of exposition, and forms no part of the principles on which our opinion was based.

The question before us is whether the fund in court is subject to the Commonwealth's lien for taxes. On the decision of this question much light is thrown by the case of Goodwin Gas Stove & Meter Co.'s Assigned Estate, 166 Pa. 296. In that case Goodwin, &c., Co. assigned in 1892 for the benefit of creditors. The property was entirely personal. The fund arose from the sale of it, and the creditors were not lien creditors. The Commonwealth had prior to the assignment settled its account for capital stock tax for the years 1882-85 against the company, but no tax lien had been filed in the office of the prothonotary of the county where the accounting officer of the corporation resided, in accordance with the Act of April 14, 1827, 9 Sm. L. 433, sec. 4. The Acts of March 30, 1811, 5 Sm. L. 228, sec. 12, and June 7, 1879, P. L. 112, sec. 14, made the balance found due in the account a lien on the property of a corporate tax debtor. The court said (p. 299) : "It cannot be doubted that the personal property in the hands of the debtor was subject to the lien of the commonwealth's taxes for all those years, for, by the express words of the act of 1879, the commonwealth's taxes were 'a lien upon the franchises and property, both real and personal, of corporations and limited partnerships,' from the time the said taxes are due and payable. It has never been asserted by any decision, and cannot be pretended with any show of reason, that the commonwealth's lien against the debtor's property, while it is still his property, is lost by not filing the certificate referred to in the act of 1827. Such a construction would be unreasonable and a total perversion of the meaning of the legislature. We entertain no doubt that Judge Strong was right in saying, as he did in Arnold's Estate, that although the failure to file the certificate postponed the commonwealth's claim to other lien claimants, it was nevertheless a lien against the debtor himself.

"If this be so, nothing can be plainer than that the rights of the general creditors of the gas company could rise no higher than those of the debtor himself. If the commonwealth's claim attached to the property in his possession, as it undoubtedly did, he could not divest it by making an assignment for the benefit of creditors. That an assignee for the benefit of creditors is not a purchaser within the meaning of the word which protects lien creditors or vendees for value, is familiar law. Neither the rights of the assignee nor those of the general creditors could rise higher than those of the assignor, and, as the property

was subject to the commonwealth's lien in his hands, it remained subject to it in the hands of the assignee; and inasmuch as the fund distributed arises from the sale of that property, the lien attaches to the proceeds as firmly as it did to the property itself in the hands of the debtor."

In the present case, therefore, we have the like fact of a statutory lien imposed upon all the personal property of the tax debtor. It is not necessary to decide whether failure to distrain operated to postpone the lien to other lien creditors of the debtor, as there are no lien creditors whose rights are in question.

It remains to consider, however, whether the principles just quoted apply to the present case, which was not a sale by an assignee for creditors nor a judicial sale. We entertain some doubt as to whether the lien for liquid fuel tax survived against the personal property of the tax debtor after it was sold and delivered into the hands of the purchaser.

The lien is the peculiar creation of the tax statute, by section 12 of which (Act of May 1, 1929, P. L. 1037) the Commonwealth's claim when reduced to judgment is expressly made a lien on all the personal property of the debtor not in the possession of the Commonwealth. It is further provided that such lien may be collected by a distraint. The tax intended to be secured is imposed solely on the sale of liquid fuels, but all the personal property whatsoever of the tax debtor is made liable to distraint for the better securing of the debt. This lien is in derogation of common law. It is stated to exist as soon as the judgment is entered, and attaches to the personal property, whether acquired before or after the entry of the judgment. The appropriate remedy of enforcement is the distraint provided. The legislation thus gives to the State, as tax creditor, a right somewhat analogous to the statutory remedy long enjoyed by county, borough and city tax collectors to levy and distrain upon the goods of a delinquent tax debtor within the county. The remedy is quick and summary.

"Where a statute makes taxes on personal property a lien thereon, a purchaser of such property takes the same free from any lien for taxes, if the title passes before such a lien attaches by levy, distraint, or otherwise": 37 Cyc. 1146. In Larson v. Hamilton County et al., 123 Iowa 485, 99 N. W. 133, the statute provided that: "Taxes upon stocks of goods or merchandise shall be a lien thereon and shall continue a lien thereon when sold in bulk, and may be collected from the owner, purchaser or vendee." It was held that a sale in bulk after assessment and before levy did not, because of the provisions of that statute, defeat the lien. Closer to the facts of the present case is Pennington v. Yakima County et al. (Supreme Court of Washington), 127 Wash. 538, 221 Pac. 326. The statute read as follows: "The taxes assessed upon personal property shall be a lien upon all the real and personal property of the person assessed, from and after the date upon which such assessment is made, and no sale or transfer of either real or personal property shall in any way affect the lien for such taxes upon such property." Certain automobiles were distrained to collect a tax upon other personal property assessed to the owner of the vehicles. The tax upon the automobiles themselves dropped out of the case by stipulation. Despite the language of the statute, which is even stronger than that in the present case, the court ruled that the lien, as against a chattel mortgage prior to the sheriff's distraint for the tax, was a mere floating and inchoate lien until levy, saying: "This floating lien against all the personal property belonging to the person assessed, other than the particular property assessed, does not fasten or become a fixed lien until the property is seized by the sheriff under [the statute] . . . wherein it is provided that the sheriff shall distrain goods and chattels belonging to the person charged with such taxes." The only

Pennsylvania case appears to be Jenkins et al. v. London, Collector, 31 L. I. 260. Under the Act of April 2, 1868, P. L. 55, supplementing the Act of April 12, 1867, P. L. 74, a tax was imposed on shares of national banks. Sec. 4 of the Act of 1868 provided that: "The taxes assessed under this act shall be a lien upon the shares of stock of said bank from the date of levy, and in case of non-payment, the shares of stock of defaulting stockholders . . . shall be subject to attachment, or levy and sale, for non-payment of tax thereon, in like manner as other personal property." The court said (p. 261) : "The tax is a lien on the shares of stock by the fourth section of the Act of 1868. The purchaser is bound to know the law and must see to it that there is no unpaid tax on the shares. This case is not different from that of a purchaser of real estate charged with unpaid taxes. He must examine for this incumbrance as well as others." This case does not necessarily depart from the doctrine of the Washington case above cited, since in the Pennsylvania case the lien was confined to the article taxed, and in the Washington case the lien was enforced upon the automobiles, as to the tax levied upon them, but not as to the tax levied on the other personalty of the tax debtor.

If the lien continues to ride on every gallon of liquid fuel sold to a consumer, the Commonwealth can go into every home and every garage shown by the debtor's books to have purchased from him since the entry of the lien and distrain upon the liquid fuels found in the possession of the consumer. For a somewhat analogous case in a different subject matter, see Parsons v. Allison, 5 Watts 72, 76, where the Supreme Court says, per curiam: "A collector's warrant, unlike a *fieri facias* which binds the goods from its delivery—formerly from the teste—has not the common-law incident of lien. Annually to tie up the chattels of a country while the taxes are in a course of collection, would be an insufferable annoyance; and before the legal existence of it can be admitted, something very explicit ought to appear in the laws supposed to inflict it."

However, without deciding whether the lien follows after the chattels of the tax debtor into whatever hands they by lawful transfer may come, we are of opinion that as against common creditors the Commonwealth's lien is enforceable upon the fund in court.

In Miller v. Myers et al., 300 Pa. 192, 199, the Supreme Court said: "The purpose of the Act of May 23, 1919, supra, supplanting that of March 28, 1905, supra, was to protect creditors against the sale of stock on hand as a whole to the prejudice of those affected, and who could look to the assets alone for the satisfaction of their claims. The legislature expressly provided for the relief of all parties concerned where the transfer of the merchandise was in bulk. . . . The act imposes certain duties upon the purchaser which he must perform, where goods are acquired in bulk, and not in the ordinary course of trade. If he fails to obey the legislative direction, he becomes liable only as a receiver for the value of the property wrongfully received, and he may fully protect himself by paying the amount thereof directly into court for distribution.

"Sales of the character contemplated more easily open the door to fraud upon creditors than a disposition of goods in the usual conduct of business, and, therefore, their regulation was deemed advisable by the legislature." "The buyer is merely made a receiver of the money value of the property which he takes over, and becomes liable to account to another for whose use it is received and held": (p. 202). "A trust fund was established for the benefit of those having valid demands . . ." (p. 205). If we look at the language of the statute we find, in section 3, that the sale shall be void unless the vendee receives the statement of creditors and gives notice in advance to the creditors listed, and further shall be void if he proceeds with the sale "without paying or seeing to it

that the purchase money of said property is applied to the payment of the bona fide claims of the creditors of the vendor pro rata according to the dignity of their several claims . . ." The same section provides that if he pay the money into court, the court shall "make distribution of said fund to and among the persons legally entitled thereto."

Having in mind the purpose of the Sales in Bulk Act, the evil to be remedied by its passage, and the duties imposed upon the vendee and upon the court, we observe as follows: The transaction is in no way an assignment for the benefit of creditors, nor is the vendee an assignee. However, the receipt of the purchase price and the distribution thereof are substantially safeguarded, and the objects of a fair and honest sale of the bulk of the assets and distribution of the proceeds equitably among those entitled, according to the dignity of their claims, are accomplished in somewhat the same manner as after an assignment for the benefit of creditors. It would seem, therefore, that the dignity of the Commonwealth's claim, which up till the time of the transfer of the assets attached as a preferred lien to them in the hands of the debtor (Goodwin's Estate, supra), will attach to the proceeds arising from the sale of that property and now in the custody of the court for distribution.

"It is the universal rule that a court, as the representative of the sovereignty of the state, will make no order for the distribution of funds in custodia legis until provision is made for payment of taxes and levies due to the state and its municipalities": 26 R. C. L. 391, sec. 348. "State taxes stand on a different basis from local levies; the former are essential to the very 'preservation' of the State itself (Schoyer v. Comet O. & F. Co., 284 Pa. 189, 193), while the latter are authorized or permitted by the State, not for its actual preservation, but merely to maintain the machinery of local government. So far as general principles enter into the matter, the basic interest of the sovereign authority requires the direct revenues of the Commonwealth to be so guarded that no lien for state taxes shall be disturbed except by payment, unless some constitutional or statutory rule dictates otherwise": Com. v. Lowe Coal Co., 296 Pa. 359, 364. "To some extent, therefore, and in proportion to the want there happens to be of systematic accountability in the respective departments, remissness of its ministers will be found in every government; and it is a principle, not only of great practical value, but of the first necessity, that the legislature shall not be taken to have postponed a public right to that of an individual, unless such an intent be manifested by explicit terms (as it has been in the order of paying a decedent's debts), or at least by necessary and irresistible implication": Com. v. Baldwin, 1 Watts 54, 55. "The State when acting in its sovereign capacity occupies a position entirely different and superior to that of the citizen . . . . It takes precedence over other creditors. It may forego its rights as a sovereign power and place itself on the same footing as one of its citizens, but unless the statutory language affecting the subject so declares it will not be presumed. The State cannot be deprived of its rights as a sovereign by inference, it must be done by appropriate constitutional or legislative action": Booth & Flinn, Ltd., v. Miller, 237 Pa. 297, 307. "In the case at bar the District Judge relied upon § 197 as justifying him in giving priority for the claim for annual franchise taxes; and in denying priority for the claim for license fees, because in respect to the latter no corresponding provision is to be found in the Tax Law. But he had no occasion to seek statutory support for the priority sought by the State; since here it does not seek to displace any prior lien. It asks merely to have its prerogative right enforced against property on which there is no prior lien and upon which it is impossible to levy, because the property has been taken out of the hands of the

574

debtor and placed in the custody of the court for purposes of protection and distribution": Marshall, Receiver, v. People of the State of New York, 254 U. S. 380, 384.

It may be well to note that in the present case the insolvency of the tax debtor may be cogently inferred from the auditor's report, according to which the net amount of funds for distribution is about $22,000 and the debts owed to 60 creditors total over $66,000, and which reveals no evidence of further assets: Hoffa v. Person, 1 Pa. Superior Ct. 357. We are of opinion that in the present case the Commonwealth is entitled to a priority arising out of its lien for taxes under the Liquid Fuels Tax Law, and that such priority has been properly recognized in the distribution by the auditor of the fund in court.

And now, to wit, October 17, 1932, the exceptions to the auditor's amended report are dismissed, and distribution is decreed to be made in accordance therewith.                                          From Charles K. Derr, Reading, Pa.